Sylvester **DANZL** on his own behalf and on behalf of all other residents and taxpayers similarly situated, Plaintiff and Appellant,

v.

The **CITY OF BISMARCK**, a municipal corporation, Defendant and Appellee.

Civ. No. 890146.

Supreme Court of North Dakota.

Jan. 25, 1990.

Rausch & Rausch, Richard P. Rausch (argued), Bismarck, for plaintiff and appellant; Appearance by Wayne Horner, 3rd year law student.

Charles C. Whitman (argued), City Atty., Bismarck, for defendant and appellee.

LEVINE, Justice.

Sylvester Danzl appealed from a summary judgment in his action to enjoin the City of Bismarck (Bismarck) from proceeding with construction of an addition to the Bismarck Civic Center. We affirm.

Bismarck prepared plans and specifications for an expansion of its Civic Center and advertised for bids to be opened and read at 5:30 p.m. on March 9, 1989. After the bids were opened, Bismarck's architect negotiated with the four low bidders for the four prime contracts (general, plumbing and heating, ventilation and air conditioning, and electrical) for lower prices based on revisions in the plans and specifications. The alterations and deductions negotiated by the architect and the low bidders reduced the cost of the project by $1,403,900. The contracts were executed on March 23, 1989.

Danzl, a Bismarck resident and taxpayer, commenced this action on April 3, 1989, on his own behalf and on behalf of all other residents and taxpayers similarly situated, to enjoin Bismarck from proceeding with the construction project. He alleged that Bismarck's procedures in awarding the contracts for construction of the Civic Center addition violated North Dakota's competitive bidding statutes. On April 12, 1989, Danzl moved for judgment on the pleadings. Bismarck requested that Danzl's mo-

tion be treated as a motion for summary judgment and moved for summary judgment in its favor on April 21, 1989. After a May 2, 1989, hearing on the motions, the trial court granted summary judgment in favor of Bismarck. Judgment was entered on May 4, 1989.

On appeal, Danzl contends that Bismarck violated certain competitive bidding statutes. Bismarck denies that it violated any competitive bidding statutes, and contends that Danzl lacks standing to sue, that Danzl's suit was not timely, and that the same result could have been achieved by simply accepting the original low bids and executing a series of change orders.

■ Bismarck contends that Danzl does not have standing to sue because he has not shown any damage to himself or other taxpayers. We disagree. Danzl, like the plaintiff in *Lang v. City of Cavalier*, 59 N.D. 75, 83, 228 N.W. 819, 822 (1930):

"complains that the city has entered into a contract ... without authority of law, and, as a result of that contract, is about to unlawfully expend and dissipate the funds of the city.... If this be so, plaintiff, as a taxpayer, has a right to bring the action in his own behalf and on behalf of all other taxpayers. He need not show any interest other than that which he has as a taxpayer, or any damage or injury to him other than that which he will suffer as a taxpayer in common with all other taxpayers. He has the right as a taxpayer to have his complaint heard."

As a Bismarck taxpayer, Danzl has standing to sue for a determination of the legality of the contracts in issue.

■ Bismarck argues that Danzl's action "should fail because he failed to act in a timely fashion." The bids were opened and read on March 9, 1989. The contracts were awarded on March 23, 1989. Danzl commended this action on April 3, 1989. Bismarck argues that "[t]he unexplained lapse of ten days changed the entire complexion of the lawsuit," and asserts: "All of the prime low bidders immediately started ordering materials for the project. By the time of the hearing on May 2, 1989, they were already on site. Danzl should have

immediately applied to the court for a temporary injunction to stop any work on the project." In an April 20, 1989, affidavit, Bismarck's architect averred "that all of the contractors have ordered extensive construction materials and that on-site construction is to begin May 1, 1989."

■ Although an individual taxpayer-plaintiff may be barred by laches from questioning a municipal transaction, his inaction will not bar relief to all other taxpayers. *Haugland v. City of Bismarck*, 429 N.W.2d 449 (N.D.1988); *Dahl v. City of Grafton*, 286 N.W.2d 774 (N.D.1980). Because Danzl "is vindicating the rights of the public generally—that is, those of all other taxpayers as well as his own—the mere fact that he himself may have been dilatory, if in fact he was, cannot estop him from bringing the action." *Lang v. City of Cavalier, supra*, 228 N.W. at 822. We conclude that Danzl is not precluded from bringing his action to question Bismarck's procedures in awarding contracts for the construction of a public building.

■ Bismarck contends that it could have achieved the same result by awarding contracts to the low bidders based on the original plans and specifications and then reducing the cost of the project by executing a series of change orders effecting the same modifications and deductions as the revisions adopted after reading the bids. A municipality may reserve in a public works contract the right to make reasonable changes. 13 *McQuillin Mun. Corp.* § 37.125 (3rd Ed.1987). We are unable to assess Bismarck's contention on this matter, however, as the record before us does not contain any of the contracts in issue. Therefore, we do not further address or resolve the question whether Bismarck could have achieved the same result by accepting the original low bids and executing change orders after letting the contracts.

■ Danzl contends that Bismarck violated competitive bidding statutes contained in Chapter 48–02, N.D.C.C., by opening bids earlier than the advertised time and by negotiating with the low bidders

without readvertising and rebidding the project upon revising the plans and specifications after the bids were opened. Section 48-02-02, N.D.C.C., provides that if the estimated cost of constructing a city building exceeds $50,000, the governing body of the city "shall procure plans, drawings, and specifications for the work." Section 48-02-03 provides: "The governing board shall advertise for bids for the doing of the work for which plans, drawings, and specifications are required by section 48-02-02." Section 48-02-04(2) requires that the advertisement for bids state "[t]he place where, and the day and hour when, the bids will be opened." Section 48-02-06 provides:

"At the time and place specified in the notice, the governing board shall open publicly and read aloud all bids received, and may reject all bids or award the contract ... to the lowest and best bidder.... The board may reject any and all bids and may advertise anew ... until a satisfactory bid is received."

Bismarck's advertisement for bids stated that the bids would be opened and read at 5:30 p.m. on March 9, 1989. Danzl contends that Bismarck "violated the law by opening the bids prior to the stated hour." Bismarck alleged in its amended answer that the bids "were opened as late as practical to allow the 5:30 p.m. reading." Danzl has not disputed Bismarck's assertions that: "The bids were in fact opened during the meeting so that they could be read at 5:30. The process of opening and recording the twenty plus bids took almost one-half hour." We believe that Bismarck substantially complied with the statute by opening the bids publicly a short time before 5:30 in order to accomplish their reading at the time stated in the notice.

■ A more compelling argument is Danzl's contention that Bismarck erred in revising the plans and specifications and negotiating with the four low bidders after the bids were opened instead of rejecting the bids and advertising anew "with request for bids so as to give all contractors an opportunity of bidding on the revised plans." Danzl's position comports with an opinion of the Attorney General of North Dakota issued to the North Dakota Secretary of State on May 13, 1970:

"The object of the bids is to provide competition and to secure the performance at the lowest cost to the governing body and yet provide assurance that the completed project will meet all of the standards specified.

"... If the Board were to accept a bid which varies substantially from the specifications, it would be giving an advantage or benefit to a certain bidder which is not enjoyed by others. Substantial compliance with the advertisement for bids and specifications contained therein is necessary to make the bidding process successful. Every bidder must be given the same opportunity.

"Thus in direct response to your first question, it is our opinion that the Board may not negotiate with the bidder or bidders when the total low base bid or bids exceeds the sum of money authorized for the project. If the bids received all exceed the amount of money available, the Board should reject all bids and re-advertise. The Board should consult the architect and determine which items may be eliminated or in what manner the plan may be altered so as to reduce the cost, and then re-advertise."

Statutory competitive bidding requirements are enacted for the benefit of the public and taxpayers to invite competition; to prevent favoritism, fraud, corruption, improvidence, extravagance, and collusion; and to secure the best work or supplies at the lowest price practicable. *See, e.g., Lasky v. City of Bad Axe*, 352 Mich. 272, 89 N.W.2d 520 (1958); *Griswold v. Ramsey County*, 242 Minn. 529, 65 N.W.2d 647 (1954); *Bolander & Sons v. City of Minneapolis*, 438 N.W.2d 735 (Minn.App.1989); 13 *McQuillin Mun. Corp.*, § 37.106 (Rev. 3rd Ed., 1989 Supp.). Competitive bidding requirements "promote honesty, economy, and aboveboard dealing in the letting of public contracts." *Coller v. City of St. Paul*, 223 Minn. 376, 26 N.W.2d 835, 841 (1947).

Danzl has not suggested the presence of any favoritism, fraud, corruption, or collusion. It is clear, however, that the four low bidders were able to reach agreements with Bismarck on the basis of specifications not available to other bidders. All bidders should have had an opportunity to bid on the revised plans and specifications.

In *Iowa—Nebraska Light & Power Co. v. City of Villisca*, 220 Iowa 238, 261 N.W. 423 (1935), the city advertised for bids on proposed plans and specifications for construction of a municipal electric light plant. All of the bids exceeded the maximum authorized cost. The city council then deleted more than $11,000 worth of material from the plans and specifications. Without readvertising for new bids on the amended plans and specifications, the city let the contract to one of the bidders after the city negotiated the elimination of more than $11,000 worth of material from that company's bid. The court held that the procedure violated competitive bidding statutes, determining that specifications cannot be altered after the bids have been made without readvertising to allow all bidders an opportunity to bid on the altered specifications. The court observed that "[t]o permit such a course without readvertising for further bids might ... effectually nullify the statute requiring competitive bidding." *Id.,* 261 N.W. at 431.

Bismarck's architect opined that "rejecting the bids and re-advertising was not in the best interests of the city." The architect further stated: "The bids received, I feel, are the best prices the city could get at that particular time." As a practical matter, the architect's opinion may have been correct. But, it is irrelevant because the legislature has ordained the procedure that must be followed when bids are rejected, including low bids, and that is to advertise anew. Notwithstanding the architect's opinion, "[i]t cannot be said that other and additional bids might not have been sub-

mitted on the revised plans if there had been a readvertisement for bids." *Iowa—Nebraska Light & Power Co. v. City of Villisca, supra,* 261 N.W. at 431. "Who can say what reduction might have been made by the other bidders on the same changes in specifications?" *Lasky v. City of Bad Axe, supra,* 89 N.W.2d at 522.

We conclude that Bismarck violated the competitive bidding statutes contained in Ch. 48–02, N.D.C.C., when it revised specifications to reduce construction costs and negotiated with the four low bidders without affording other bidders an opportunity to bid on the revised project.[1]

■ But what is the remedy for the violation? Danzl's amended complaint alleges that he and all other taxpayers similarly situated are entitled to have Bismarck enjoined "from continuing with such project under the bids received or negotiated contracts" and prays "that an injunction be issued accordingly, enjoining [Bismarck] from proceeding further herein." Danzl did not seek to restrain construction pending final resolution of this suit or take any extraordinary steps to secure final resolution before construction started. Construction has moved well along.

Danzl's attorney conceded at oral argument that they do not expect the building to be torn down. Danzl did not suggest or request any other remedies, such as enjoining Bismarck from making any further payments for work and materials used in the project and allowing Bismarck to recover any money already paid to the contractors. However, under the circumstances presented in this case, those remedies would be inequitable and, therefore, unavailable. In *Northwestern Sheet & Iron Works v. Sioux County,* 76 N.D. 451, 460, 36 N.W.2d 605, 610 (1949), this court held that a public body must pay the reasonable value of goods obtained pursuant to a contract made in violation of competitive bidding statutes "when equity and good con-

---

1. We note that this is not a case like *Fischbach & Moore, Inc. v. New York City Transit Authority,* 79 A.D.2d 14, 435 N.Y.S.2d 984 (App.Div. 1981), where the court held that a municipal agency may obtain cost concessions through postbid negotiations with the lowest responsible bidder if there is no departure from the original specifications, no concessions are made to the bidder, the municipality does not improperly coerce the low bidder to making unfair and unwarranted concessions, and the ultimate price was fair.

science require payment" even though the contract is "unenforceable in strictly legal actions":

> "[C]ontracts for the sale of goods or material to a public corporation based upon procedures which contain major violations of mandatory statutes providing for competitive bidding are unenforceable in strictly legal actions.
>
> "A public corporation may not escape liability for the reasonable value of goods obtained and retained by it through transactions coming within the general powers of the corporation and the contracting corporate board, which are procedurally defective without paying the reasonable value thereof when equity and good conscience require payment."

*See also Sykeston Township v. Wells County*, 356 N.W.2d 136 (N.D.1984); *Schoonover v. Morton County*, 267 N.W.2d 819 (N.D.1978).

It is important to note that Danzl has not alleged that Bismarck or any of the successful bidders exhibited a lack of good faith in the contracting process. As this court held in Syllabus ¶ 7 of *Northwestern Sheet & Iron Works, supra*, where there has been "a substantial and good faith attempt to comply" with a competitive bidding statute and the successful bidder "made a good faith proposal to furnish material which was accepted" and "it is not claimed that the goods were not worth the amount the board agreed to pay therefor, equity and good conscience require that the county pay the reasonable value of the material it received."

The rationale underlying decisions requiring public bodies to pay the reasonable value of goods and services it receives under contracts made in violation of competitive bidding statutes, absent bad faith, is well stated in *Miller v. City of Des Moines*, 143 Iowa 409, 122 N.W. 226, 232 (1909):

> "But plaintiffs' action is an [sic] equity.... A temporary injunction against the execution of the contract was not sued out, nor was any measure taken to prevent the parties from proceeding thereunder except as to pendency of the suit might act as a deterrent until after the cause had been decided in the trial court and its decision was brought here for review upon appeal.... A contract was outstanding which if finally upheld, would render the city liable to the contractor for withholding the work and the contractor liable to the city for refusing to do the work when tendered.... In any event the work has been done; it has been accepted by the city; it is of a character which cannot be returned to the contractors and thus place them in statu quo; ... the prices charged are not shown to be unreasonable; the invalidity of the contract is not chargeable to any wrong or omission on the part of the contractor, but solely to the act of the city through its council. To say that the party doing such work must receive no remuneration therefor, and must return the compensation already received, is to impose all the penalty upon an innocent party for the profit of the only party chargeable with the wrong. We are not disposed to so order. Courts of equity often refuse to enforce a naked legal right where the results would be manifestly unjust or unconscionable.... 'The corporation could not be permitted to repudiate the contract and retain the fruits of it.' *Currie v. District*, 35 Minn. 163, 27 N.W. 922. In point, also, is *Gardner v. Butler*, 30 N.J.Eq. 702."

Although we have concluded that Bismarck violated the competitive bidding statutes, under the circumstances presented here, we affirm the summary judgment in favor of Bismarck because Danzl took no steps to prevent construction while his suit was litigated to conclusion; Danzl has not alleged the occurrence of any favoritism, fraud, corruption, collusion, improvidence or extravagance; Danzl rightly conceded that the building should not be torn down; Danzl has not asserted that the prices charged are unreasonable; Danzl has not alleged a lack of good faith by Bismarck or the successful bidders; and equity and good conscience therefore require that Bismarck pay the reasonable value of what it receives under the contracts, which, presumably, is the contract price in each case.

In view of Danzl's lack of attention toward a remedy for Bismarck's violation of the competitive bidding statutes, we assume that his purpose in bringing suit was to "have the invalidity of the proceedings by which the award was made adjudicated and determined as a protection to [himself] and to the public against similar irregularities in the future. That end is attained by our decision as already announced." *Miller v. City of Des Moines, supra*, 122 N.W. at 233.

The judgment is affirmed. Because Danzl secured a determination that Bismarck violated the competitive bidding statutes, he is awarded costs.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.