James P. Rausch (argued), of Rausch & Rausch, Bismarck, for plaintiff and appellant.

Charles C. Whitman (argued), City Atty., Bismarck, for defendant and appellee.

**BECKER ELECTRIC, INC., Plaintiff and Appellant,**

v.

**CITY OF BISMARCK, a municipal corporation, Defendant and Appellee.**

**Civ. No. 900323.**

Supreme Court of North Dakota.

May 7, 1991.

GIERKE, Justice.

Becker Electric, Inc., appeals from a district court summary judgment dismissing its action against the City of Bismarck. We affirm.

The City advertised for bids for an expansion of the Bismarck Civic Center. Becker and four other contractors submitted bids for the electrical contract, one of four prime contracts on the project. Becker's was the second-lowest electrical bid. The low electrical bid was submitted by Edling Electric.

Because the bids exceeded the available budget for the project, the City had the architect negotiate with the low bidders on each of the four prime contracts to make revisions that would lower the cost of the project within the available budget. The City then executed contracts with the four original low bidders, including Edling Electric, based upon these revised specifications.

In *Danzl v. City of Bismarck,* 451 N.W.2d 127 (N.D.1990), a taxpayer suit to enjoin the project, we held that the procedure employed by the City violated the competitive bidding statutes. *See* Chapter 48–02, N.D.C.C. We concluded that the

City should have revised the plans and readvertised for bids rather than negotiating exclusively with the low bidders. However, because the project had been substantially completed and because Danzl did not argue for any suitable alternative remedy, no relief was awarded.

After our opinion in *Danzl* was filed, Becker commenced this action against the City to recover its bid preparation costs of $11,266. On cross-motions for summary judgment, the district court held in favor of the City and dismissed Becker's action. Becker appealed from the summary judgment.

■ It is well settled that statutory competitive bidding requirements are enacted for the benefit of the public to invite competition, to prevent favoritism, fraud, and collusion, and to secure the best work and supplies at the lowest price. *See, e.g., Danzl v. City of Bismarck, supra,* 451 N.W.2d at 130. Because these statutes are enacted to benefit the public and are not intended to directly benefit contractors, it is equally well settled that a contractor generally may not recover damages against a public entity for violation of the competitive bidding statutes. *E.g., Perkins v. Lukens Steel Co.,* 310 U.S. 113, 126, 60 S.Ct. 869, 876, 84 L.Ed. 1108, 1114 (1940); *Curtis Ambulance of Florida, Inc. v. Board of County Commissioners,* 811 F.2d 1371, 1376 n. 1 (10th Cir.1987); *Sutter Brothers Construction Co., Inc. v. City of Leavenworth,* 238 Kan. 85, 708 P.2d 190, 196 (1985); *Airline Construction Co., Inc. v. Ascension Parish School Board,* 568 So.2d 1029, 1033 (La.1990); 10 E. McQuillen, Law of Municipal Corporations § 29.86 (3d ed. rev. 1990) Annot., 65 A.L.R.4th 93, 99 (1988); 64 Am.Jur.2d *Public Works and Contracts* §§ 82, 86 (1972).

Courts have, however, carved out narrowly drawn exceptions to the general rule. The seminal case recognizing such an exception, and the case most heavily relied upon by Becker to support its assertions here, is *Heyer Products Co. v. United States,* 135 Ct.Cl. 63, 140 F.Supp. 409 (1956). The United States Army had advertised for bids on 5,500 circuit testers. Al-though Heyer was the low bidder, the contract was awarded to Weidenhoff Company, whose bid was higher than six other bids and nearly double Heyer's low bid. Heyer also asserted that a prior Army contract for circuit testers had been awarded to Weidenhoff, although again its bid was higher than six others and nearly double Heyer's low bid. Heyer had testified before a Senate committee regarding this earlier bidding process.

■ Becker asserts that *Heyer* stands for the proposition that an unsuccessful bidder may recover its bid preparation costs if the contracting agency violates competitive bidding laws, rules, or regulations. The *Heyer* court, however, clearly rejected this theory. Heyer had asserted that the award of the contract to Weidenhoff violated the Armed Services Procurement Act of 1947, which required acceptance of the bid which was most advantageous to the government. The court held that violation of the statute did not give rise to a cause of action by an unsuccessful bidder:

> "It has been settled beyond controversy that most statutes governing the awarding of bids by governmental agencies are enacted for the benefit of the public who are served by these agencies, and not for the benefit of the bidders, and, therefore, that bidders have no right to sue on the ground that the provisions of such an Act have been violated, in that the contract had not been let to the lowest bidder....

> \*    \*    \*    \*    \*    \*

> "So, if an award is made to a bidder whose bid was not 'most advantageous to the Government, price and other factors considered', and the Act was, therefore, violated, it is only the public who has a cause for complaint, and not an unsuccessful bidder." *Heyer, supra,* 140 F.Supp. at 412 [citations omitted].

In refusing to dismiss Heyer's complaint for failure to state a cause of action, the Court of Claims stressed that Heyer's claims, if proven, would demonstrate fraud and collusion:

"It was an implied condition of the request for offers that each of them would be honestly considered, and that that offer which in the honest opinion of the contracting officer was most advantageous to the Government would be accepted. No person would have bid at all if he had known that 'the cards were stacked against him.' No bidder would have put out $7,000 in preparing its bid, as plaintiff says it did, if it had known the Ordnance Department had already determined to give the contract to the Weidenhoff Company. It would not have put in a bid unless it thought it was to be honestly considered. It had a right to think it would be. The Ordnance Department impliedly promised plaintiff it would be. This is what induced it to spend its money to prepare its bid.

"The OTAC knew it would involve considerable expense to prepare models, photographs, diagrams and specifications and other things necessary to comply with the invitation, and so, when it invited plaintiff to incur this expense, it must necessarily be implied that it promised to give fair and impartial consideration to its bid, having in mind only the interest of the Government and not the interest of some favorite bidder.

"That promise was broken, shamefully broken, if plaintiff's petition states the facts. If the facts there stated are true, the conclusion seems inescapable that the Ordnance Department knew from the beginning they were going to give Weidenhoff the contract. The advertisement for bids was a sham, done only to appear to comply with the law, to clothe their apparently dishonest purpose with the habiliments of legality. If these allegations are true, they practiced a fraud on plaintiff and on all other innocent bidders. They induced them to spend their money to prepare their bids on the false representation that their bids would be honestly considered." *Heyer, supra,* 140 F.Supp. at 412–413.

The Court of Claims was careful to restrict its holding to those cases involving fraud or collusion:

"It goes without saying that not every unsuccessful bidder is entitled to recover the cost of putting in his bid. Recovery can be had in only those cases where it can be shown by clear and convincing proof that there has been a fraudulent inducement for bids, with the intention, before the bids were invited or later conceived, to disregard them all except the ones from bidders to one of whom it was intended to let the contract, whether he was the lowest responsible bidder or not. In other words, it must be shown that bids were not invited in good faith, but as a pretense to conceal the purpose to let the contract to some favored bidder, or to one of a group of preferred bidders, and with the intent to wilfully, capriciously, and arbitrarily disregard the obligation to let the contract to him whose bid was most advantageous to the Government." *Heyer, supra,* 140 F.Supp. at 414.

Similarly, the other cases cited by Becker to support its claims all involved situations where the governmental authority wrongfully refused to award the contract to a bidder entitled thereto, or where the governmental agency acted fraudulently or in collusion with one of the bidders. *E.g., King v. Alaska State Housing Authority,* 633 P.2d 256 (Alaska 1981) (summary judgment dismissing the complaint was inappropriate where plaintiffs' allegations, if proved, would show that they were entitled to award of the contract); *City of Auburn v. Mavis,* 468 N.E.2d 584 (Ind.Ct.App.1984) (city which set specifications in collusion with one bidder liable for unsuccessful bidder's bid preparation costs under state antitrust statute); *Paul Sardella Construction Co., Inc. v. Braintree Housing Authority,* 3 Mass.App.Ct. 326, 329 N.E.2d 762 (1975), *aff'd,* 371 Mass. 235, 356 N.E.2d 249 (1976) (housing authority which wrongfully rescinded its award of contract to low bidder and awarded contract to another bidder liable for bid preparation costs). *See also Space Age Engineering, Inc. v. United States,* 4 Cl.Ct. 739 (1984) (recovery of bid costs allowed only upon clear and convincing proof that the award of the contract to another was arbitrary and ca-

pricious); *Morgan Business Associates, Inc. v. United States,* 223 Ct.Cl. 325, 619 F.2d 892 (1980) (bidder whose bid was negligently lost by government could not recover bid costs absent a showing of a "substantial chance" that it would have received the contract).

The cases cited by Becker are all distinguishable and do not support a cause of action based upon the facts in this case. Becker does not allege any fraud or collusion by the City in the bid process. Nor did the City breach an implied promise to consider the bids fairly and honestly which wrongfully denied an award to a responsible low bidder. Becker does not dispute that if the City had accepted Edling Electric's original bid Becker would now have no basis for complaint. Becker did not lose a contract to which it was entitled; it merely lost an opportunity to bid on a project different in scope from the original. We conclude that the case law does not support a cause of action under the circumstances of this case.

Finally, we note that no public interest would be served by an award of bid prepa-ration costs to Becker at this late date. Upon discovering the irregularity in the bidding procedure, Becker did not immediately seek an injunction or a writ of mandamus, actions which would have fostered the public interest. *See, e.g., Sutter Brothers Construction Co., Inc. v. City of Leavenworth, supra,* 708 P.2d at 195; *Telephone Associates, Inc. v. St. Louis County Board,* 364 N.W.2d 378, 382–383 (Minn. 1985).

The district court correctly concluded that Becker's complaint fails to state a claim upon which relief may be granted. Accordingly, the summary judgment dismissing Becker's complaint is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.