*882 TEXTO COMPLETO DE LA SENTENCIA
Mediante un recurso de revisión, acude ante nos Bir Ram Construction & Engineers Corp. (Bir Ram) solicitando que ordenemos a la Junta de Subastas del Municipio de Hatillo que le adjudique a Bir Ram el contrato de obra para la construcción del Centro de Alojamiento Para Envejecientes, o anule la subasta. Debido a que la Junta incumplió su deber al no informar mediante un addendum una variación sustancial en el proyecto a ser subastado, y la oferta más baja en la subasta fue mayor a la suma asignada en presupuesto para la construcción del proyecto subastado, se expide el auto de revisión y se anula la subasta recurrida.
I
El jueves 11 de mayo de 2000, el Municipio de Hatillo (el Municipio) publicó un aviso de subasta para la construcción del estadio municipal y la construcción del Centro de Alojamiento Para Envejecientes (el Centro) en el Periódico Primera Hora. En el mismo se informó que la Junta de Subastas del Municipio (la Junta) estaría recibiendo propuestas en sobres cerrados para la construcción del Centro, hasta el 30 de mayo de 2000, a las 9:30 a,m. en el Salón de la Asamblea Municipal. Además, en el aviso se informó que se realizaría una pre-subasta compulsoria para la construcción del Centro, el día 19 de mayo de 2000 a las 10:00 a.m., en el Salón de la Asamblea Municipal.
Desde el 15 de mayo de 2000, se entregaron a los licitadores el Manual del Proyecto de Construcción del Centro. En el mismo se incluyó una copia del "Instruction to Bidders" del American Institute of Architects (AIA Document A701), edición de 1978, como reglamento del proceso de subasta y en el cual se establece la siguiente norma:
*883 “3.2.3 Any interpretation, correction or change of the Bidding Documents will be made by Addendum. Interpretations, corrections or changes of the Bidding Documents made in any other manner will not be binding, and Bidders shall not rely upon such interpretations, corrections and changes. ” [Apéndice del recurso de revisión, anejo II, pág. 6].
A las 10:30 a.m. del 19 de mayo de 2000, asistieron a la pre-subasta compulsoria representantes de Bir Ram Construction & Engineers Corp., Alejandro Torres García DBA A.T.G. Contractors (ATG) y Edwin Lugo Ríos (Lugo). La Junta suspendió la pre-subasta por el arquitecto William Rosa (Rosa) no poder asistir a la misma e informó a los licitadores que la pre-subasta sería celebrada el lunes 22 de mayo a las 10:30 a.m. También, la Junta le informó a los licitadores que la fecha de la subasta se cambió para el 5 de junio de 2000, pero las ofertas se iban a poder presentar hasta las 9:30 a.m. del 9 de junio.
El 22 de mayo de 2000, se celebró la pre-subasta. A la misma asistieron representantes de Bir Ram, ATG y Lugo. Además, asistieron como licitadores, representantes de Best Building Group, Corp. (Best. Building), Man's Contractor y Desarrolladores J.M., Inc. (Desarrolladores). Durante la pre-subasta se estableció que el estacionamiento del Centro era una alterna aditiva entre otras especificaciones adicionales con relación a la construcción del Centro.
El 9 de junio de 2000, se celebró la subasta de la construcción del Centro. Durante la misma se recibieron las siguientes ofertas:

“1. Bir Ram presentó una oferta base de $667,000.00 y no presentó una oferta alterna aditiva para la construcción del estacionamiento.

2. Desarrolladores presentó una oferta base de $800,000.00 y una oferta alterna aditiva de $27,000.00 para la construcción del estacionamiento.

3. Best Building presentó una oferta base de $756,000.00 y una oferta alterna aditiva de $41,000.00 para la construcción del estacionamiento.

4. ATC presentó una oferta base de $649,000.00 y una oferta alterna aditiva de $35,000.00 para la construcción de un estacionamiento con alumbrado.

5. Lugo presentó una oferta base de $800,500.00 y una oferta alterna aditiva de $28,000.00. ”

En la Minuta de la subasta, se mencionó lo siguiente:

“El Ing. Angel Vázquez, representante de la compañía ATC Contractors, desea hacer un señalamiento a la Junta de Subastas referente a que durante el día de la pre-subasta se indicó que se incluiría como Alterna Aditiva el área del estacionamiento y la compañía Bir Ram Construction no cumplió con esa especificación. Su oferta no incluye el costo de la alterna aditiva de estacionamiento y sólo incluye un total del proyecto.

La Junta de Subastas indica que tomará en consideración dicho señalamiento al momento de adjudicar la subasta. ” [Apéndice del recurso de revisión, anejo IX, pág. 27].
El 20 de junio de 2000, se reunió la Junta con Rosa. Durante la reunión se discutió el planteamiento del representante de ATG, en el sentido de que Bir Ram no cumplió con la especificación de presentar una alterna aditiva. Rosa indicó a la Junta que durante la pre-subasta se indicó que para la subasta se sometería el precio total con una alterna aditiva de estacionamiento. Por lo tanto, Rosa entendió que la oferta de Bir Ram debió haber incluido la alterna aditiva del estacionamiento. Al no incluirla, añadió Rosa, la Junta debía tomar en consideración la oferta de Bir Ram al momento de adjudicar el proyecto de construcción del Centro.
*884 Mediante una carta de 22 de junio de 2000, el Ing. Manuel L. Buriel (Buriel), presidente de Bir Ram, informó a la Junta que la oferta de su compañía había cumplido con todos los requisitos legales de la licitación que se solicitó en el aviso de subasta. Como Bir Ram no recibió ningún addendum que oficializara algún otro acuerdo, entendió que la cotización no tenía cambios y licitó por todo el proyecto sin alternas. Además, Buriel informó que durante la pre-subasta él nunca se enteró personalmente de que había que someter una alterna aditiva por el estacionamiento. Tampoco recibió un addendum que hiciera oficial tal decisión. En adición, Birriel informó que el costo deductivo de su licitación sería de $28,000.00. De esa manera, Bir Ram se convertía en el mejor postor de la subasta.
Durante la reunión del 22 de junio de 2000, la Junta discutió la carta de Bir Ram y decidió posponer la contestación a la carta para otra reunión. En la reunión del 13 de julio de 2000, la Junta volvió a discutir la carta de Bir Ram. En esa ocasión, la Junta decidió no tomar en consideración la oferta de Bir Ram por no haber cumplido con los requisitos indicados en la pre-subasta.
El 3 de agosto de 2000, se volvió a reunir la Junta. Durante la reunión, la Junta ordenó que se enviara una carta certificada a Bir Ram en contestación a la carta con fecha de 22 de junio de 2000 que le envió dicho licitador. En la carta enviada por la Junta, se indicaría lo siguiente:

“1. Que de acuerdo a la evidencia, sifué discutido en la pre-subasta la alterna aditiva y que en ningún momento se indicó que se enviaría un addendum relacionado a dicha subasta. Se ordenó que se incluyera con la carta documentación evaluada por la Junta, en la que se incluía las minutas de la pre-subasta, la subasta y otras reuniones de la Junta.

2. Que el representante de la firma ATC realizó la observación en presencia de la Junta y en compañía del representante de la firma Lugo.

3. Que se entiende que la firma Bir Ram no cumplió con los requisitos indicados en la pre-subasta. ”

Durante la reunión del 3 de agosto de 2000, la Junta adjudicó la construcción del Centro a ATC. Además, la carta ordenada por la Junta fue enviada a Bir Ram. Junto a lo expresado en las minutas del 3 de agosto de 2000, en la carta, la Junta expresó que de las minutas de la pre-subasta se desprende "que no tenía que enviarse un addendum o documento alguno a los licitadores relacionado a esta subasta." Apéndice del recurso de revisión, anejo XXTV, pág. 68. También, con fecha de 3 de agosto de 2000, se envió otra carta a Bir Ram en la que la Junta le informó oficialmente que la subasta de la construcción del Centro fue adjudicada a ATC. En esta segunda carta, la Junta no le informó a Bir Ram de su derecho a revisar la adjudicación de la subasta de la construcción del Centro.
Inconforme con la adjudicación de la subasta, Bir Ram oportunamente acudió ante nos mediante un recurso de revisión (KLRA-00-00611), al cual acompañó una moción en auxilio de jurisdicción. En su recurso de revisión, Bir Ram alegó que la Junta había cometido los siguientes cuatro errores:

“1) Haber adjudicado la subasta de la construcción del Centro a ATG cuando Bir Ram fue el menor postor.

2) No haber tomado en consideración la oferta de Bir Ram, por éste no haber cumplido con unos nuevos requisitos que no le fueron notificados a través de un Addendum. A pesar que el reglamento adoptado por la Junta establece que ningún cambio al proyecto no entraría en vigor hasta que se notifique a través de un addendum.

3) Haber notificado a los licitadores la adjudicación de la subasta sin informarle su derecho a revisión, el término para hacerlo y la fecha del archivo en autos de la copia de la notificación.

*885
4) Que la subasta es nula, porque la Junta la anunció sin tener fondos suficientes para poder construir el Centro. ”

En su moción de auxilio de jurisdicción, Bir Ram nos solicitó que ordenáramos al Municipio a formalizar el contrato de obra de construcción del Centro hasta que resolvamos este recurso. Por ello, el 25 de agosto de 2000, prohibimos al Municipio a formalizar el contrato de obra de construcción del Centro con ATC hasta que resolviéramos el recurso. También concedimos un período de 31 días al Municipio para que mostrara causa por la que no debíamos revocar la decisión de la Junta y ordenar que las obras en cuestión se adjudiquen a favor de Bir Ram.
El 6 de septiembre de 2000, el Municipio volvió a notificar la adjudicación de la subasta de la construcción del Centro. En esta segunda ocasión, el Municipio informó, en la notificación, el derecho de los licitadores a solicitar la revisión de la adjudicación, el término para solicitar la revisión y el día en que se realizó el archivo en autos de la copia de la notificación.
El 22 de septiembre de 2000, Bir Ram presentó ante nos un segundo recurso de revisión (KLRA-00-00678). En él, Bir Ram repitió los errores alegados en su primer recurso de revisión, excepto el de la notificación defectuosa de la adjudicación de la subasta. También, el 22 de septiembre de 2000, Bir Ram nos solicitó la consolidación de ambos recursos de revisión.
El 6 de octubre de 2000, ordenamos la consolidación de los dos recursos de revisión presentados por Bir Ram. Con el beneficio de haber recibido el alegato en oposición del Municipio, nos encontramos en posición para resolver. Anulamos la subasta del contrato de obra para la construcción del Centro de Alojamiento Para Envejecientes del Municipio de Hatillo.
II
El inciso (b) del artículo 11.001 de la Ley Núm. 81 del 30 de agosto de 1991 [21 L.P.R.A. § 4501(b)], según enmendada, y conocida como la Ley de Municipios Autónomos, establece que como requisito previo a que un municipio pueda efectuar un contrato de obra de construcción o mejora pública por una cantidad mayor a los $40,000.00, el municipio debe cumplir con el procedimiento de subasta pública. Los procesos de subastas públicas en los municipios serán conducidos por una Junta de Subastas, teniendo dicha Junta la facultad de "establecer las normas y procedimientos para su funcionamiento interno y para llevar a cabo las funciones y responsabilidades que se le fijan en la Ley de Municipios Autónomos”. Art. 11.005 de la Ley de Municipios Autónomos, id. See. 4505. Cuando una subasta pública se realice para poder efectuar contratos de compras, construcciones o suministros de servicios, la Junta de Subastas tendrá el deber de adjudicar la subasta a favor del postor razonable más bajo, excepto cuando se beneficie el interés público al adjudicar la subasta a un postor que no sea el más bajo. Art. 11.006 (a) de la Ley de Municipios Autónomos, id. Sec. 4506(a).
La razón por la cual se establece el requisito de subastas públicas (competitive bidding) antes de que un municipio pueda efectuar un contrato por una suma considerable de dinero, es con el fin de fomentar la competencia, evitar el favoritismo, la imprevisión, la extravagancia, el fraude y la corrupción, asegurando el mejor trabajo o materiales por el precio más bajo posible. El requisito de tener que realizar subastas públicas es para el beneficio de los contribuyentes, y no para el enriquecimiento de los licitadores. Por ello, tales estatutos deben ser interpretados y aplicados con el fin de cumplir con dichos propósitos de manera justa y razonable, teniendo como única referencia el interés público. Los estatutos que establecen el requisito de subastas públicas son interpretados de manera estricta por las cortes, y no serán extendidos más allá de su propósito razonable. McQuillin Mun. Corp. § 29.29 (3rd Ed.). Véanse además, Hatton v. Municipio de Ponce, 134 D.P.R. 1001, 1005 (1994); Justiniano v. E.L.A., 100 D.P.R. 334, 338 (1971); Lasky v. City of Bad Axe, 89 N.W.2d 520, 522 (Mich. 1958); Danzl v. City of Bismarck, 451 N.W.2d 127, 130 (N.D. 1990).
Para que las subastas públicas puedan cumplir su propósito, éstas deben ser realizadas de manera que *886 ofrezcan una justa y razonable oportunidad de competencia. Los licitadores deben ser puestos en posiciones de perfecta igualdad, para que ellos puedan competir sustancialmente en la misma propuesta y bajo las mismas condiciones. Por tal motivo, los proyectos y sus especificaciones deben ser provistos a todos los licitadores, y éstos deben contener toda la información necesaria que permita a los licitadores preparar sus respectivas ofertas. McQuillin Mun. Corp. § 29.52 3rd Ed.); Marbucco Corporation v. City of Manchester, 632 A. 2d 522, 524 (N. H. 1993).
Cuando un municipio realiza una variación en el proyecto a ser subastado después de haberlo informado a los licitadores, entonces el municipio tiene el deber de informar la variación a todos los licitadores antes de la fecha en que se efectúe la subasta. De lo contrario, si la variación impide que haya una justa competencia entre los licitadores, entonces la subasta se convierte en una ilegal y el proceso de subasta realizado debe ser anulado; sección 5(c), Parte HI del Reglamento Revisado Sobre Normas Básicas Para Municipios de Puerto Rico del 30 de junio de 1995 (Oficina del Comisionado de Asuntos Municipales); American Institute of Architects & Associated General Contractors of America, Recommended Guide For Competitive Bidding Procedures and Contract Awards for Building Construction 6 (1980); Grace Construction Company v. St. Charles Parish, 467 So.2d. 1371, 1374 (La. 5th Cir. App. 1985); Boger Contracting Corporation v. Bd. of Commissioners of Stark County, 396 N.E.2d 1059, 1062-1064 (Oh. 5th Cir. App. 1978); Danzl v. City of Bismarck, supra, págs. 130-131; Iowa-Nebraska Light & Power Co. v. City of Villisca, 261 N.W. 423, 430-431 (Ia. 1935).
No toda variación realizada por un municipio después de haber provisto el proyecto a los licitadores, invalida una subasta. Para que se invalide una subasta, es necesario que la variación sea sustancial. Una variación sustancial es aquélla que afecta el precio del proyecto a ser subastado, que le ofrece una ventaja o beneficio a unos licitadores sobre otros licitadores y que la variación sea un elemento considerado al momento de determinarse el precio. Pascoe v. Barium, 225 N.W. 506, 507 (Mich. 1929); Lasky v. City of Bad Axe, supra, pág. 522.
El Artículo 8.004 de la Ley de Municipios Autónomos, supra, sec. 4354, establece lo siguiente:

“Las obligaciones y desembolsos de fondos públicos municipales sólo podrán hacerse para obligar o pagar servicios, suministros de materiales y equipo, reclamaciones o cualesquiera otros conceptos autorizados por ley, ordenanza o resolución aprobada al efecto, y por los reglamentos adoptados en virtud de las mismas.

(a).

(b) No podrá gastarse u obligarse en año fiscal cantidad alguna que exceda las asignaciones y los fondos autorizados por ordenanza o resolución para dicho año. Tampoco se podrá comprometer, en forma alguna, al municipio en ningún contrato o negociación para pago futuro de cantidades que excedan a la asignaciones y a los fondos. Estarán excluidos de lo dispuesto en este inciso, los contratos de arrendamiento de propiedad mueble e inmueble y de servicios.

(c).
(d).”•
El Tribunal Supremo, al interpretar estatutos similares al citado, ha resuelto que un contrato con un municipio es ultra vires y nulo, de no existir asignación en el presupuesto del municipio para sufragar los gastos que surgen del contrato. Hatton v. Mun. de Ponce, supra, pág. 1007; Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37, 55 (1988); Morales v. Municipio de Toa Baja, 119 D.P.R. 682, 692 (1987); San Miguel, ETC. & Cía. v. Municipio, 72 D.P.R. 391, 402-403 (1951); De La Cruz v. Gobierno de la Capital, 68 D.P.R. 534, 544-545 (1948); Gayá v. Gobierno de la Capital, 68 D.P.R. 281, 288 (1948); Torrellas v. Municipio, 62 D.P.R. 217, 221 (1943); González v. Municipio, 61 D.P.R 369, 371 (1943); Humacao Lumber Co. v. Am. Surety Co., 59 D.P.R. *887 165, 169-170 (1941); Moscoso Hno. & Cía. v. Municipio, 50 D.P.R. 188, 190 (1936).
Además, el Tribunal Supremo ha expresado, al interpretar un estatuto similar al citado, que se prohíbe a un municipio "incurrir en obligaciones o gastos en exceso de los créditos asignados en el presupuesto vigente". Morales v. Municipio de Toa Baja, supra, pág. 690. Véase también, Ocasio v. Alcalde Mun. de Maunabo, supra, pág. 51. Del mismo modo, en otras jurisdicciones se ha resuelto que un contrato en el que un municipio se obliga a pagar una suma de dinero en exceso a la cantidad de dinero asignado en determinada partida de su presupuesto, es inválido. No se puede subsanar dicha invalidez con un aumento a la asignación presupuestaria después de haber comenzado el proceso de la pública subasta. Williams Et Al. v. City of New York, 104 N.Y.S. 14, 17-19 (1907); T. A. Clark Co. v. Board of Education of City of New York, 109 N.E. 1093 (N.Y. 1915); Klink v. Pounds, 163 N.Y.S. 1008, 1009-1010 (1916); P. J. Carlin Const. Co. v. Prendergast, 116 N.E. 1068 (N.Y. 1917); Davis v. City of New York, 270 N.Y.S.2d 265, 270-271 (1966).
Ill
En este caso, la adjudicación de la subasta del contrato de obra para la Construcción del Centro de Alojamiento Para Envejecientes a favor de ATG es inválida, al igual que el proceso de subasta pública después de haberse conocido las ofertas de los licitadores.
Según explicamos anteriormente, una junta de subastas tiene la facultad de establecer normas para regular los procedimientos de subastas llevados ante su consideración. Pero, una vez una junta de subastas establece unas normas, entonces ella está obligada a obedecerlas. Asociación Vecinos del Hospital San Jorge v. United Medical Corporation y Géronimo Partnership, Etc., Opinión de 19 de enero de 2000, 2000 J.T.S. 21, pág. 563; RBR Construction, S.E. v. Autoridad de Carreteras y Transportación de P.R. y su Junta de Subastas, Opinión de 22 de diciembre de 1999, 2000 J.T.S. 7, pág. 468; T-JAC, Inc. v. Caguas Centrum Limited Partnership, S.E., Opinión de 12 de abril de 1999, 99 J.T.S. 60, pág. 884; y Comité de Vecinos Pro Mejoramiento Inc. v. Junta de Planificación, Opinión de 19 de marzo de 1999, 99 J.T.S. 32, pág. 734.
En este caso, la Junta de Subastas del Municipio de Hatillo adoptó el "Instruction to Bidders" del American Institute of Architects, edición de 1978, como reglamento del proceso de subasta. En el Artículo 3.2.3 del "Instruction to Bidders", se establece claramente que cualquier interpretación, corrección o cambio realizado a los documentos de la subasta (el Manual del Proyecto de Construcción del Centro) será realizado por medio de un addendum. Por lo tanto, cualquier interpretación, corrección o cambios realizados a los documentos de la subasta por otro medio que no fuera por addendum, no obligaba a los licitadores. Estos debían decartar los cambios. Ante este cuadro de hechos, Bir Ram no debía tomar en consideración la alterna aditiva del estacionamiento al momento de presentar su oferta, porque la Junta no la notificó a los licitadores mediante un addendum. La Junta erró al no tomar en consideración la oferta de Bir Ram por el hecho de no haber presentado una oferta alterna para la construcción del estacionamiento. La parte que incumplió las "Instruction to Bidders" fue la Junta al no realizar el addendum correspondiente para informar la alterna aditiva del estacionamiento, no Bir Ram.
La obligación de la Junta de informar la alterna aditiva del estacionamiento mediante addendum cobró más . fuerza por ser una variación sustancial en el proyecto a ser subastado. Dicha variación es sustancial, ya que se alteró el precio del proyecto, se le dio una ventaja a unos licitadores sobre otros y la Junta tomó la variación en cuenta al momento de adjudicar la subasta. Además, por no haber notificado la alterna aditiva del estacionamiento mediante un addendum, la Junta se confundió y no adjudicó la subasta al licitador más bajo. Si se examina la totalidad de las ofertas realizadas por todos los licitadores, se podrá apreciar que la oferta más baja fue realizada por Bir Ram y no por ATC. En la subasta, Bir Ram ofreció construir el Centro de Alojamiento Para Envejecientes en su totalidad por el precio de $667,000.00, mientras que ATG ofreció construir el Centro de Alojamiento Para Envejecientes en su totalidad por el precio de $675,000.00 ($649,000.00 de la oferta base de ATG más $35,000.00 por la construcción del estacionamiento con alumbrado).
*888 En resumen, ante este cuadro de hechos, procedía que la Junta anulara la subasta y anunciara la celebración de una nueva.
IV
Además de lo anterior, la oferta más baja hecha por los licitadores era mayor que la suma de dinero asignada en presupuesto para la construcción del Centro.
De las minutas que forman parte del apéndice del recurso de autos, se puede apreciar que las ofertas de los licitadores fueron anunciadas el día 9 de junio de 2000. La subasta se adjudicó a favor de ATG el, 3 de agosto de 2000. Del apéndice del escrito de oposición del Municipio, se puede apreciar que hasta el 26 de junio de 2000, la asignación del presupuesto para la construcción del Centro era de $500,000.00. No fue hasta esa fecha que con la aprobación de la Asamblea Municipal y el alcalde, se aumentó la asignación en presupuesto para la construcción del Centro a $726,500,00.
Como el Municipio había asignado en presupuesto una suma de dinero menor a la oferta más baja ofrecida por los licitadores, entonces la subasta se convirtió en inválida. Morales v. Municipio de Toa Baja, supra, pág. 690; y Ocasio v. Alcalde Mun. de Maunabo, supra, pág. 51. Dicha invalidez no podía ser subsanada por el aumento a la asignación presupuestaria aprobada durante el período entre la apertura de las ofertas y la adjudicación de la subasta. Williams Et Al. v. City of New York, supra, págs. 17-19; T. A. Clark Co. v. Board of Education of City of New York, supra, pág. 1093; Klink v. Pounds, supra, págs. 1009-1010 (1916); P. J. Carlin Const. Co. v. Prendergast, supra, pág. 1068; Davis v. City of New York, supra, págs. 270-271. La Junta debió haber anulado la subasta del contrato de obra para la construcción del Centro y haber tomado medidas para rectificar la situación, ya sea modificar el proyecto para reducir el costo de la obra o acudir ante la Asamblea Municipal para aumentar la asignación presupuestaria. Una vez el Municipio rectificara la situación, entonces la Junta debía comenzar un nuevo proceso de subasta. Véase la sección 10 (7), parte III del Reglamento Revisado Sobre Normas Básicas Para los Municipios de Puerto Rico, supra] Klink v. Pounds, supra, pág. 1009; y Danzl v. City of Bismarck, supra, pág. 130.
V
En conclusión, como la Junta incumplió su deber al no informar mediante un addendum una variación sustancial en el proyecto a ser subastado, y la oferta más baja en la subasta era mayor a la suma asignada en presupuesto para la construcción del proyecto subastado, se expide el auto de revisión y se anula la subasta recurrida para el contrato de obra del Centro de Alojamiento Para Envejecientes adjudicada a favor de ATG Contractors por la Junta de Subastas del Municipio de Hatillo, el día 3 de agosto de 2000.
Lo acordó y ordena el Tribunal, y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General