701 A.2d 441

SPINA ASPHALT PAVING EXCAVATING CONTRACTORS, INC., PLAINTIFF–RESPONDENT, v. BOROUGH OF FAIRVIEW AND THE MAYOR AND COUNCIL OF THE BOROUGH OF FAIR-VIEW AND TOMARO CONTRACTING, INC., DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued September 10, 1997—Decided September 26, 1997.

Before Judges D'ANNUNZIO, A.A. RODRIGUEZ and COBURN.

*Jennifer A. Cottell* argued the cause for appellant Tomaro Contracting, Inc. (*Gerard F. Smith,* attorney; *Ms. Cottell,* on the brief).

*John L. Schettino* argued the cause for appellants Borough of Fairview and the Mayor and Council of the Borough of Fairview (*Giblin and Giblin,* attorneys; *Mr. Schettino,* on the statement in lieu of brief).

*David M. Payne* argued the cause for respondent, Spina Asphalt Paving Excavating Contractors, Inc.

The opinion of the court was delivered by

COBURN, J.A.D.

The Borough of Fairview, upon receipt of bids submitted in accordance with the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 to –49, awarded a contract for its Ninth Street Sewer, Phase 13

Project to defendant Tomaro Contracting, Inc. ("Tomaro"). Plaintiff, Spina Asphalt Paving Excavating Contractors, Inc. ("Spina"), instituted this action in lieu of prerogative writs, claiming that the Borough arbitrarily failed to recognize that Spina's bid was lower than Tomaro's. On motions for summary judgment filed by all parties [1] to the action, the Law Division agreed with Spina and ordered the Borough to award it the contract. The municipal defendants and Tomaro appeal. We affirm.

The bidding was on a unit price basis and the proposals were submitted on forms supplied by the Borough. There were twenty-five items. One item provided the source of this litigation. It related to the provision of dense graded aggregate base course. The proposal form and the manner in which Spina's bid was expressed is as follows:

| "ITEM NO. | ESTIMATED QUANTITY | DESCRIPTION AND UNIT PRICES | UNIT PRICE | COMPUTED TOTALS |
|---|---|---|---|---|
| 6. | 1,350 S.Y. | Dense Graded Aggregate Base Course, 4" Thick <br> FOUR HUNDRED Dollars | $400.00 | $5400.00" |

(Only the underlined words and figures were inserted by Spina.) The other twenty-four items were set up in a similar fashion. At the end of the form the bidder was required to express in words and numbers the total of the twenty-five items. Spina's total bid expressed in words and figures in the proper place at the end of the form was $125,781.85. Tomaro's total bid of $128,108.50 was higher by $2,326.65.

The bid specifications in part provided:

8. Errors in Bid

---

[1] The municipal defendants and Tomaro requested oral argument in their moving papers on the motions. The Law Division decided the case without affording oral argument to these parties in violation of *R.* 1:6–2(d). Since all parties have pressed for a speedy decision by us so that the work can be accomplished, and since no prejudice has resulted from the Law Division's failure to comply with the rule, a remand would be inappropriate. Nonetheless, we emphasize that there was no justification for the denial of the opportunity to appear and argue the motions in court.

> In the event there is a discrepancy between the unit prices and the extended totals, the unit prices shall prevail. In case there is an error in the summation of the extended totals, the extended totals shall govern and the computed summation by the Engineer shall be accepted as the amount bid.
>
> In the event there is a discrepancy between the item unit bid prices written in numbers and the item unit bid prices written in words, the item unit bid prices written in words shall govern.

[Emphasis added.]

Another provision of the specifications reserved to the Borough the right to "waive any informality if deemed in the best interests of the Owner."

On the evening the bids were opened, plaintiff discovered that its secretary had erroneously indicated the unit price for item No. 6 as $400 per square yard when it should have been $4 per square yard, as reflected in the total bid for that aspect of the work. The next morning Spina faxed a statement to the Borough indicating the intended unit price was $4 for item No. 6.

On December 12, 1995, the Borough awarded the contract to Tomaro, taking the position that a literal application of Specification 8 required recalculation of Spina's bid to reflect the $400 per unit price, thus making its total bid $660,381.85 instead of the total listed on the bid form of $125,781.85.

The Law Division held that the error in Spina's bid was "nonmaterial and subject to waiver" under *Township of River Vale v. R.J. Longo Construction Co.*, 127 *N.J.Super.* 207, 316 *A.*2d 737 (Law Div.1974). That case was approved by the Supreme Court in *Meadowbrook Carting Co. v. Borough of Island Heights*, 138 *N.J.* 307, 650 *A.*2d 748 (1994):

> In *River Vale, supra*, 127 *N.J.Super.* at 216, 316 *A.*2d 737, Judge Pressler set forth a two-part test for determining "whether a specific noncompliance constitutes a substantial and hence non-waivable irregularity." As the Appellate Division observed in *L. Pucillo & Sons, Inc. v. Township of Belleville*, 249 *N.J.Super.* 536, 547, 592 *A.*2d 1218, *certif. denied*, 127 *N.J.* 551, 606 *A.*2d 364 (1991) (*Pucillo* ), "the test of materiality has been reduced to [a] * * * two-prong analysis." It requires a determination
>
>> "[']first, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a

bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.[']"

[*Ibid.* (quoting *Palamar Constr., Inc. v. Township of Pennsauken,* 196 *N.J.Super.* 241, 255, 482 *A.*2d 174 (App.Div.1983) (quoting *River Vale, supra,* 127 *N.J.Super.* at 216, 316 *A.*2d 737)).]

[*Id.* at 315, 650 *A.*2d 748.]

■ We agree with the Law Division on this point. However, in doing so we are not indicating, nor do we take the Law Division as indicating, that generally an error in a statement of a price can be treated as immaterial. It is only when, as here, the error is patent and the true intent of the bidder obvious that such an error may be disregarded.

The Supreme Court faced a similar problem in *Public Constructors, Inc. v. New Jersey Expressway Authority,* 43 *N.J.* 545, 206 *A.*2d 350 (1965). As to one of 138 unit items, the bidder described its unit price in numbers as "$250" and in words as "Sixty-five hundred dollars per acre." Based on the quantity involved, the extended price was listed as "$6,500." However, use of the figure expressed in words would have required the total bid for this item to be considered as being $169,000. The bid specifications provided, "In case of a discrepancy between the prices written in words and those written in figures, the written words shall govern." *Id.* at 547, 206 *A.*2d 350. The Court responded to the public entity's disregard of the written words and its acceptance of the numbers as representing the price bid in the following manner:

> Plaintiff claims that since under the specifications the written words must govern, the bid for stripping the 26 acres must be considered as $169,000. That figure if used would make Langenfelder's bid higher than plaintiff's and therefore plaintiff contends the contract should have been awarded to it.
>
> No one disputes that $250 reasonably represents the going rate per acre for stripping top soil. $6,500 per acre would be *grotesquely exorbitant.* On considering the matter, particularly the fact that in arriving at the full amount of the bid Langenfelder used the total sum of $6,500 for stripping the 26 acres, and not 26 × $6,500, the Authority concluded *there was no discrepancy or ambiguity of any consequence, that the bidder's clear intention* was to bid $250 per acre, and that there was no so-called "built-in" error.
>
> Every reasonable bit of evidence in the record demonstrates beyond any doubt that the bid for the stripping work as intended to be made, as in fact made, and as utilized in the computation of the total bid for the construction work was $250 per

acre for 26 acres. We agree with the trial court that plaintiff's attack on the award of the contract is without legal substance.

[*Id.* at 548, 206 *A.*2d 350 (emphasis added).]

Similarly, in the subject case, no one disputes that $400 per item would be "grotesquely exorbitant." *Id.* Indeed, as the Law Division recognized, it was an error so obvious that the true intent of the bidder was clear beyond any doubt. In such circumstances, the error is clearly waivable. *Id.*

The Borough and Tomaro contend that our decision in *Colonnelli Bros., Inc. v. Village of Ridgefield Park*, 284 *N.J.Super.* 538, 665 *A.*2d 1136 (App.Div.1995) supports their position, but the case is clearly distinguishable. There the losing bidder had submitted with respect to one item a unit bid in words of "one hundred dollars no cents" but a numerical amount of $10,000. The $10,000 was also used for the computed total for that item and for the aggregate bid. After losing to the low bidder, plaintiff claimed that it had the right to change its computed total on the item in question to $100, which would have made its overall aggregate bid lower than that submitted by the entity which had been awarded the contract by the municipality.

The court noted that a certification submitted to the trial court by the Township Engineer stated that "he 'estimated' the component for the [item in question to] be about $5,000, and that the other bids received therefor ranged from $2,000 to $15,000. He concluded that a $100 bid was not a 'responsible expenditure to cover this phase of the work.'" *Id.* at 540–41, 665 *A.*2d 1136. In those circumstances, the court correctly observed that acceptance of the plaintiff's position would leave room for "manipulation and fraud." *Id.* at 542, 665 *A.*2d 1136. The $100 number was obviously inconsistent with the bidder's intent, and the bidder was merely attempting to use that mistake to suggest that its bid was other than what was obvious. The bid, as submitted, had the capacity to deprive the municipality of any assurance that the contract would be performed and it was most certainly capable of providing plaintiff with an unfair advantage over the other bidders. There-

fore, it was properly rejected under the *River Vale* criteria. *Meadowbrook Carting Co., supra,* 138 *N.J.* at 315, 650 *A.*2d 748.

■ The Law Division, having properly found that Spina's noncompliance with the bid specifications was not material and therefore waivable, went on to hold that the Borough acted arbitrarily in failing to award Spina the contract. We agree. A public entity's decision to grant or deny waiver is "subject to review under the ordinary abuse of discretion standard." *In Re Protest of Award of On–Line Games Prod. and Operation Servs. Contract,* 279 *N.J.Super.* 566, 595, 653 *A.*2d 1145 (App.Div.1995). When, as here, the failure to waive the deviation would "thwart the aims of the public bidding laws," *id.* at 596, 653 *A.*2d 1145, the municipality is obliged to grant the waiver. *See Cardell, Inc. v. Township of Madison,* 54 *N.J.* 151, 253 *A.*2d 814 (1969).

Affirmed.