761 A.2d 1110

IN THE MATTER OF THE BID OF AGATE CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, ON NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION PROJECT NO. 2125.

Superior Court of New Jersey
Appellate Division

Argued October 12, 2000—Decided November 20, 2000.

Before Judges D'ANNUNZIO, KEEFE, and EICHEN.

*Adrienne L. Isacoff* argued the cause, for appellant Agate Construction Co., Inc. (*Lowenstein Sandler*, attorneys; *Steven E. Brawer*, of counsel; *Ms. Isacoff*, on the brief).

*Kevin J. Thornton* argued the cause, for respondent Albrecht & Heun, Inc. (*Fox, Rothschild, O'Brien & Frankel*, attorneys; *Mr. Thornton*, on the brief).

*John M. Van Dalen*, Senior Deputy Attorney General, argued the cause, for respondent Department of Environmental Protection (*John J. Farmer, Jr.*, Attorney General, attorney; *Mr. Van Dalen*, on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, P.J.A.D.

Agate Construction Co., Inc. (Agate) appeals from a determination of the Department of Environmental Protection (DEP) that

Agate was not the low bidder on a project. The DEP awarded the contract to Albrecht & Heun, Inc. (Albrecht). We affirm.

The DEP solicited bids for the dredging of a navigation channel in Cape May County known as the Middle Thorofare. The DEP received five bids, which were opened on April 19, 2000. Albrecht's bid was the lowest at $627,666. Agate bid $628,296, or $630 more than Albrecht.

The dredging project included placing some of the dredge material on a 7.1–acre site described as the North Remedial Area # 1. This material had to be "deposited, graded, stabilized, seeded and fertilized." Sub-item 4.6 required the contractor to supply and spread 3,000 pounds of fertilizer, "broadcast at a rate of 400 lbs/ac. . . ." The Project Description told bidders that Sub-item 4.6 "shall be paid for on a unit price per acre for the spreading of fertilizer, complete and in place, over the North Remedial Area # 1."

The Bid Sheet appeared as follows:

*SUB–ITEM 4.6 SPREAD FERTILIZER*

The spreading of 3,000 pounds of fertilizer, complete and in place, over 7.1 acres at a unit price of _____ per acre or . . . . . . $ _____

Agate bid a "unit price" of $2.00, but its extended total was $6,000. After the bids were opened, the DEP contacted Agate regarding its bid on this Sub-item. By letter dated April 26, 2000, Agate stated that its bid contained a mathematical error in Sub-item 4.6. Agate claimed that its bid for this item should have been $14.20 instead of $6,000, a difference of $5,985.80. Thus, contended Agate, its total bid should have been $622,310.20, or $5,355.80 *less* than Albrecht's bid. The DEP rejected Agate's position, concluding that Agate had intended to bid $6,000 for that item of work, and had arrived at the $6,000 figure by multiplying $2 times 3,000 pounds of fertilizer.

Agate protested, arguing that the specifications require the DEP to change the $6,000 to $14.20 by virtue of the language in Section 1:06, which states that "[i]n the event of a discrepancy between a unit price bid and an extended total in the bid proposal,

the unit price shall govern." Because the "unit" in question was 7.1 acres, Agate argued that its "unit price" must be multiplied by the number of acres to adhere to the specifications.

The DEP again rejected Agate's contention, citing the bids of other contractors for that item of work. The other contractors' "unit prices" for this item were between $200 and $1,756, and the average "extended price," not including Agate's bid, was $4,859. The DEP concluded that $14.20 bid for work others were bidding between $1,400.00 and $12,467.60 was "unreasonable." The DEP concluded "[i]n these circumstances, we believe that it would be inappropriate to use the unit price language of the RFP to allow [Agate] to change the amount ... bid for Sub-item 4.6 and thereby change [their] bid total, thus becoming the low bidder."

Bids for public contracts frequently involve discrepancies, ambiguities, and internal conflicts. The New Jersey Supreme Court summarized general principles applicable to bidding disputes in *Meadowbrook Carting Co. v. Borough of Island Heights*, 138 *N.J.* 307, 650 *A.*2d 748 (1994). The Court stated that strict compliance with bid specifications and bid statutes is required, and local governments are without discretion to accept defective bids. *Id.* at 314, 650 *A.*2d 748. A "contract must be awarded not simply to the lowest bidder, but rather to the lowest bidder that complies with the substantive and procedural requirements in the bid advertisements and specifications." *Id.* at 313, 650 *A.*2d 748 (citing *Township of Hillside v. Sternin*, 25 *N.J.* 317, 324, 136 *A.*2d 265 (1957)).

The Supreme Court reiterated the firmly established general rule that material conditions contained in bidding specifications may not be waived. *Meadowbrook, supra,* 138 *N.J.* at 314, 650 *A.*2d 748. However, "minor or inconsequential discrepancies and technical omissions can be the subject of waiver." *Ibid.*

Judge Pressler in *Township of River Vale v. R.J. Longo Constr. Co.,* 127 *N.J.Super.* 207, 316 *A.*2d 737 (Law Div.1974), described a two-part test for determining whether a specific deviation consti-

tuted a substantial and, therefore, non-waivable irregularity. It requires a determination

> first, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.
>
> [*Id.* at 216, 316 *A.*2d 737.]

The Supreme Court applied the *River Vale* test in *Meadowbrook.* 138 *N.J.* at 315, 650 *A.*2d 748. *See L. Pucillo & Sons, Inc. v. Township of Belleville,* 249 *N.J.Super.* 536, 547, 592 *A.*2d 1218 (App.Div.), *certif. denied,* 127 *N.J.* 551, 606 *A.*2d 364 (1991).

In an attempt to establish bright-line rules of easy application, most bid documents contain comparison of bids rules. Some provide that unit price times the quantity will prevail over the extended total. Some bid specifications require that unit bids be expressed in words *and* figures and that, in the event of a discrepancy, the written words will prevail. It is apparent, however, that these rules must be applied with judgment and measured discretion.

*Public Constructors, Inc. v. New Jersey Expressway Auth.,* 43 *N.J.* 545, 206 *A.*2d 350 (1965), involved a bright-line rule in the bid specifications which provided that "[i]n case of a discrepancy between the prices written in words and those written in figures, the written words shall govern." *Id.* at 547, 206 *A.*2d 350. There, Langenfelder's bid for stripping 26 acres was stated in figures as "$250" per unit (acre) with "$6,500" as the extension. However, the written words in Langenfelder's bid stated "Sixty Five Hundred dollars per acre." The bid in words would have resulted in an extension of $169,000. Application of the bright-line rule would have made Public Constructors the lowest bidder, instead of Langenfelder. The Supreme Court affirmed a judgment rejecting Public Constructors' attempt to have it declared the lowest bidder. The Court stated:

> No one disputes that $250 reasonably represents the going rate per acre for stripping top soil. $6,500 per acre would be grotesquely exorbitant. On considering. the matter, particularly the fact that in arriving at the full amount of the bid Langenfelder used the total sum of $6,500 for stripping the 26 acres, and not 26 × $6,500, the Authority concluded there was no discrepancy or ambiguity of any consequence, that the bidder's clear intention was to bid $250 per acre, and that there was no so-called 'built-in' error.
>
> Every reasonable bit of evidence in the record demonstrates beyond any doubt that the bid for the stripping work as intended to be made, as in fact made, and as utilized in the computation of the total bid for the construction work was $250 per acre for 26 acres. We agree with the trial court that plaintiff's attack on the award of the contract is without legal substance.
>
> [43 *N.J.* at 548, 206 *A.*2d 350.]

Thus, in *Public Constructors,* the bright-line rule was not applied because its application would have yielded a "grotesquely exorbitant" price. *Ibid.*

In *Spina Asphalt Paving Excavating Contractors, Inc. v. Borough of Fairview,* 304 *N.J.Super.* 425, 701 *A.*2d 441 (App.Div. 1997), we did not enforce the requirement that unit prices shall prevail in the event of a discrepancy between the unit price bid and the extended total. There, Spina had bid $400 per yard to supply 1,350 yards of aggregate base course. *Id.* at 427, 701 *A.*2d 441. The bid showed $5,400 as the extended total, which calculates to $4.00 per yard. *Ibid.* Applying the bidding specification that the unit price prevails, the Borough increased Spina's bid by $540,000 and awarded the contract to Tomaro Contracting, Inc. *Id.* at 428, 701 *A.*2d 441. Spina sued and prevailed in the trial court. We affirmed because "the error is patent and the true intent of the bidder obvious...." *Id.* at 429, 701 *A.*2d 441. In this regard, we noted that "no one disputes that $400 per item would be 'grotesquely exorbitant.'" *Id.* at 430, 701 *A.*2d 441. Thus, as in *Public Constructors, supra,* the bright-line rule was waived to eliminate an exorbitantly high price.

In *Colonnelli Bros., Inc. v. Village of Ridgefield Park,* 284 *N.J.Super.* 538, 665 *A.*2d 1136 (App.Div.1995), an exorbitantly *low* bid was eliminated. There, plaintiff's bid for "Maintenance of Traffic" during construction was expressed in words as "one-hundred dollars no cents," but the numerical bid was $10,000. *Id.*

at 540, 665 *A*.2d 1136. Plaintiff's total bid, utilizing the $10,000 figure, was approximately $6,000 higher than the lowest bid. *Ibid.* Consequently, plaintiff sought to limit its bid for traffic maintenance to $100. *Ibid.* To this end, plaintiff invoked the rule in the bidding instructions that " 'unit bid prices written in words shall govern.' " *Ibid.* The trial court agreed with the plaintiffs. We reversed.

The evidence supported a determination that $100 was not a realistic price for traffic maintenance. The municipal engineer estimated the cost to be approximately $5,000, and the other bids ranged from $2,000 to $15,000. *Id.* at 540–41, 665 *A*.2d 1136. We concluded that "the trial judge improperly interfered with the [municipality's] appropriate exercise of discretion in awarding the contract to Montana [Construction Co.]. . . ." *Id.* at 541, 665 *A*.2d 1136. We also expressed concern about the potential "for manipulation and fraud if, after the bids were rendered, a bidder could clarify its bid or express which figure it intended to use, depending on the other bids presented." *Id.* at 542–43, 665 *A*.2d 1136.

■ In the present case, we perceive neither a mistaken exercise of discretion nor arbitrary, unreasonable, or capricious action in the DEP's determination to award the contract to Albrecht. *See generally In re Protest of the Award of the On–Line Games Production and Operation Services Contract,* 279 *N.J.Super.* 566, 591–92, 653 *A*.2d 1145 (App.Div.1995) (discussing the standards of review in bidding cases). We observe that the bright-line rule Agate invokes does not by its terms apply to this controversy. The specifications require that the "unit price shall govern" in the event of a discrepancy. Here, there is no dispute about the unit price; Agate and DEP agree that the unit price is $2.00. The problem was identifying the unit to which the unit price applied. The DEP determined that Agate intended to use pounds of fertilizer as the unit and, therefore, $6,000 accurately expressed Agate's intended bid for Sub-item 4.6. The DEP's determination in this regard is supported in the record. It is also supported by

the established fact that $14.20 to supply and spread 3,000 pounds of fertilizer would have been an unreasonably low price.

Agate contends that the DEP may not reject a Sub-item bid because it is too low, or was a "nominal bid." *See Riverland Constr. Co. v. Lombardo Contracting Co.*, 154 *N.J.Super.* 42, 45, 380 *A.*2d 1161 (App.Div.1977); *Frank Stamato & Co. v. City of New Brunswick*, 20 *N.J.Super.* 340, 344, 90 *A.*2d 34 (App.Div. 1952). Even if we assume the viability of that principle, the DEP, in the present case, did not reject Agate's revised bid of $14.20 because it was too low. The DEP relied on the unreasonableness of that amount as support for the inference it drew that Agate intended to bid $6,000 at $2.00 per pound for 3,000 pounds of fertilizer.

Agate's reliance on *Cardell, Inc. v. Township of Madison*, 54 *N.J.* 151, 253 *A.*2d 814 (1969), *rev'g on dissent below* 105 *N.J.Super.* 604, 253 *A.*2d 826 (App.Div.1969), is misplaced. There, the comparison of bids rule applied when the total of an item was not equal to the product of the unit price and quantity. In that event, the bidding instructions stated that "the unit price will be assumed to be the total divided by the item quantity." Adjustment of the bid in *Cardell* did not yield an exorbitantly high price or an unreasonably low price.

Affirmed.