2001 SD 26

The ESTATE OF Kerry JUHNKE, Deceased, by Janice JUHNKE, Administratrix, and the Estate of Thomas Juhnke, Deceased, by Teresa Juhnke, Administratrix, Plaintiffs and Appellants,

v.

George MARQUARDT, as Special Administrator of the Estate of Calvin Marquardt, Deceased, George Marquardt, Darlene Engelmeyer, Edward Engelmeyer, Dotty Adams, Carol Marnach, and Steve Marnach, Defendants and Appellees.

No. 21574.

Supreme Court of South Dakota.

Argued Jan. 10, 2001.

Decided March 7, 2001.

Jonathan K. Van Patten, Vermillion, Robert J. Burns, Burns Law Firm, Sioux Falls, Attorneys for plaintiffs and appellants.

John H. Billion, Lon J. Kouri of May, Johnson, Doyle & Becker, Sioux Falls, Attorneys for defendants and appellees.

GILBERTSON, Justice.

[¶ 1.] The estates of Thomas and Kerry Juhnke (Juhnkes) brought this action under South Dakota's version of the Uniform Fraudulent Transfers Act (UFTA) to set aside various gifts made by Calvin Marquardt (Marquardt) to the defendants. The circuit court granted summary judgment in favor of the defendants as to certain transfers, finding that the date of transfer under UFTA was the date the gifts were received. Therefore, the UFTA

claims were barred by the statute of limitation. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Marquardt operated a feed and chemical business under the name of Marquardt Feed. As part of the business operation, Calvin would often extend credit to his customers and receive promissory notes in return. Over time, Marquardt loaned substantial amounts of money to Juhnkes, who operated a hog facility near Marquardt's home. The relationship between Marquardt and Juhnkes deteriorated as the parties began to dispute the actual amount of the loan. This dispute led to a tragic confrontation on July 10, 1993, during which Marquardt shot and killed both Thomas and Kerry. Marquardt was convicted of first degree manslaughter and sentenced to twenty-five (25) years in prison. On August 13, 1996, Marquardt died while still incarcerated.

[¶ 3.] On December 15, 1994, a wrongful death action was commenced against Marquardt by Janice Juhnke, the wife of Kerry, and Teresa Juhnke, the wife of Thomas. Default judgment was entered in favor of each estate in the amount of $1.5 million. During the course of the wrongful death action, it was discovered that Marquardt had made substantial gifts to his children and nieces, who are the defendants in this action. Those gifts consisted of a number of promissory notes payable to Marquardt Feed by various customers of the business.

[¶ 4.] This present action was commenced on July 9, 1996 to set aside a number of those gifts as fraudulent transfers pursuant to SDCL chapters 54–8 and 54–8A. Specifically, Juhnkes challenged certain transfers they claimed were made after July 10, 1993, the date they became creditors of Marquardt. While the promissory notes in question were all gifted to the defendants prior to August 28, 1992, Juhnkes claimed they were not "transferred" under UFTA terminology until the payors made payment on the notes. The

defendants received multiple payments from the payors on the notes after July 10, 1993. Juhnkes claimed the notes were not "transferred" until the defendants received those payments and therefore, Juhnkes were entitled to avoid those payments under SDCL 54–8A–5(a). The defendants claimed the notes were transferred when they received physical possession of the notes. The circuit court granted summary judgment in favor of the defendants as to Juhnkes' claim under SDCL 54–8A–5, finding that the notes were transferred on the date they were received by the defendants. Juhnkes appeal raising the following issue:

> Whether the circuit court erred in holding that the notes were "transferred" when delivered to the defendants, rather than when payments on the notes were received.

## STANDARD OF REVIEW

[¶ 5.] When reviewing a trial court's decision to grant summary judgment, we will affirm only if all legal questions have been decided correctly and there are no genuine issues of material fact. *Holzer v. Dakota Speedway*, 2000 SD 65, ¶ 8, 610 N.W.2d 787, 791 (citations omitted). The nonmoving party will receive the benefit of all reasonable inferences that can be drawn from the facts. *Id.* It is the responsibility of the moving party to demonstrate the absence of genuine issues of material fact. *Id.* at 791–92. Only if that burden is met will the moving party be entitled to judgment as a matter of law. *Id.* Additionally, summary judgment will be affirmed if it is correct for any reason. *Id.* at 792.

## ANALYSIS AND DECISION

[¶ 6.] This Court recently discussed UFTA in *Prairie Lake Health Care Sys., Inc. v. Wookey*, 1998 SD 99, 583 N.W.2d 405. We noted that "the purpose of the UFTA is to thwart depletion of debtors' estates to the disadvantage of unsecured creditors." *Id.* ¶ 6, 583 N.W.2d

at 410. Under UFTA, both actually fraudulent transfers and constructively fraudulent transfers are subject to avoidance. *Id.* ¶ 7, 583 N.W.2d at 411. While a finding of fraudulent intent is required to show actual fraud, "[a] debtor's intent in transferring assets is immaterial to a constructively fraudulent transfer . . . ." *Id.* ¶ 14, 583 N.W.2d at 413.

[¶ 7.] Juhnkes claim is based on one of the constructive fraud provisions, SDCL 54–8A–5(a), which provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Under this statute, one of the elements that Juhnkes must establish is that their claim arose before the allegedly fraudulent transfer occurred. This appeal will thus turn upon when the notes were "transferred" to the defendants. According to the provisions of UFTA:

> A transfer is made: (ii) [w]ith respect to an asset that is not real property or that is a fixture, when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under this chapter that is superior to the interest of the transferee . . . .

SDCL 54–8A–6(1)(ii). Although the term "perfected" is not defined under UFTA, it was intended by the drafters of UFTA that parties look to Article 9 of the U.C.C. for guidance as to the meaning of that term. Uniform Fraudulent Transfers Act (U.L.A.) § 6, cmt. 1. Pursuant to South Dakota's version of Article 9, instruments [1] can be perfected only by possession. SDCL 57A–9–304(1). Therefore, as the circuit court held, when the defendants took possession of the notes given by Marquardt, their interests were perfected under SDCL 54–8A–6(1)(ii).

[¶ 8.] While this conclusion may seem to be dispositive, Juhnkes point out that perfection cannot occur under Article 9 until all the elements of attachment are satisfied, one of which is the giving of value.[2] SDCL 57A–9–203(1)(b). Juhnkes argue that because no value was given by the defendants in exchange for the notes, no attachment occurred and therefore the notes were not perfected under Article 9 of the U.C.C. By extension, they claim the notes were not "transferred" under SDCL 54–8A–5 until value was given, which did not occur until payment was received from the payors on the notes. Therefore, according to Juhnkes, all payments made by the payors to the defendants after July 10, 1993 are subject to avoidance.

[¶ 9.] Such strict adherence to the requirements of Article 9, as advocated by Juhnkes, is unwarranted. To define perfection as used in UFTA, we refer to Article 9 by analogy only.

1. The term "instrument" includes "a negotiable instrument . . . or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment." SDCL 57A–9–105(1)(i).

2. Value is given when a person acquires rights:
(a) In return for a binding commitment to extend credit or for the extension of immediately available credit . . . or (b) As security for or in total or partial satisfaction of a preexisting claim; or (c) By accepting delivery pursuant to a preexisting contract for purchase; or (d) Generally, in return for any consideration sufficient to support a simple contact.
SDCL 57A–1–201(44).
The remaining elements required before attachment occurs are (1) the debtor has rights in the collateral and (2) a security agreement has been signed or the collateral is in the secured party's possession. SDCL 57A–9–203.

The purpose of [section 6(1)] is to prevent a transfer from becoming invulnerable to attack by the lapse of time after it was made *when the fact of the transfer has not been disclosed in any way to creditors of the transferor.* The intended effect of the provision is to prod the parties to a transfer to deliver and take possession or to record it or otherwise give it overt publicity.

Frank R. Kennedy,[3] *The Uniform Fraudulent Transfer Act,* 18 UCC LJ 195, 208 (1986) (emphasis added). The gift of the promissory notes in this case accomplished this goal. When the defendants took physical possession of the notes, the entire world was on notice that Marquardt was no longer the owner of those notes.

[¶ 10.] Furthermore, Juhnkes cannot claim they were unaware of the transfers. Four notes were gifted to the defendants on which Juhnkes were listed as payors, three of which were signed by Juhnkes. Between December 31, 1986 and April 11, 1996, Juhnkes made at least ten separate payments, totaling nearly $350,000, to the defendants. In addition, one of the defendants sued Juhnkes in 1992 to enforce one of the notes gifted to her by Marquardt. Clearly, Juhnkes were on notice that Marquardt had gifted the notes to the defendants. Therefore, the purpose of SDCL 54–8A–6(1) was accomplished.

■ [¶ 11.] Further support for our conclusion is found in Article 9, which applies only "[t]o any transaction (regardless of its form) which is intended to create a security interest in personal property . . . ." SDCL 57A–9–102. Marquardt clearly did not intend to create a security interest in

the notes when he made the gifts to defendants. Nor does Article 9 contemplate this scenario. To apply Article 9 to this situation would require donees to give some value in exchange for a gift in order to protect that gift from the transferor's future creditors. Such a requirement destroys the very nature of a gift as something voluntarily transferred without compensation. Black's Law Dictionary 696 (7th ed.1999). UFTA provides that "[i]f applicable law does not permit the transfer to be perfected as provided in [SDCL 54–8A–6(1)], the transfer is made when it becomes effective between the parties to it." SDCL 54–8A–6(3). Because Article 9 does not contemplate the situation before us, it is not proper to impose its mandates. Instead, we apply SDCL 54–8A–6(3) and determine when the transfer was effective between the parties. It is settled law that a gift is complete when its three elements are satisfied: intent, delivery, and acceptance. *Meyer v. S.D. D.S.S.,* 1998 SD 62, ¶ 12, 581 N.W.2d 151, 155. All three elements were satisfied when the notes were delivered to the defendants. Therefore, the transfer is deemed made upon delivery of the notes.[4]

[¶ 12.] Additionally, it should be noted that if we were to adopt Juhnkes' reasoning, no gift would be safe from the reach of UFTA regardless of the lapse of time since the gift. Under Juhnkes' argument, if one of the defendants had received a gift of personal property from Marquardt some fifty years ago, the statute of limitation will not begin to run on that gift until the donee has given value. Therefore, unless value has been given, that gift would be subject to avoidance even today.[5] Such a

---

3. Kennedy was a member of the committee that drafted UFTA for the National Conference of Commissioners on Uniform State Laws.

4. Juhnkes' argument that the gifts were incomplete because Marquardt exercised control over the notes, does not affect our conclusion. The note they rely on named Marquardt and Darlene Engelmeyer, one of the defendants, as co-payees. That note was subsequently gifted to Darlene on

March 24, 1989. On that date, Marquardt relinquished any rights he may have had to receive payment on the note, therefore, the gift was complete. The fact that Juhnkes made payments to Marquardt until 1991 does not show Marquardt's control, it shows they paid the wrong party.

5. Counsel for Juhnkes conceded as much at oral argument.

result is clearly contrary to our public policy of barring stale claims and "allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability...." *Green v. Siegel, Barnett & Schutz,* 1996 SD 146, ¶ 8, 557 N.W.2d 396, 398.

[¶ 13.] The adoption of Juhnkes' reasoning would likewise cause great unease in South Dakota's lending industry, which has in the past and will in the future, rely on promissory notes and other personal property as collateral. If payments made on such notes are avoidable simply because the notes are not paid in full, the notes essentially have no value as collateral. Such a holding would throw lender-borrower relationships into a state of upheaval.

[¶ 14.] Judgment is affirmed.

[¶ 15.] MILLER, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur.