2001 SD 107

H & W CONTRACTING, LLC, and Jamie Frentz, a Taxpayer and Elector of the City of Watertown, Petitioners and Appellants,

v.

CITY OF WATERTOWN, Municipal Corporation, Defendant and Appellee,

and

Pipestone Concrete, Inc., Intervenor and Appellee.

Nos. 21654, 21671, 21675.

Supreme Court of South Dakota.

Argued May 31, 2001.

Decided Aug. 15, 2001.

Thomas J. Welk of Boyce, Murphy, McDowell & Greenfield, Matthew McCaulley of Hynes & McCaulley, LLC, Sioux Falls, for petitioners and appellants.

Roy A. Wise of Richardson, Groseclose, Wyly, Wise & Sauck, Aberdeen, for appellee City of Watertown.

Mark E. Salter of Cutler, Donahoe & Mickelson, Sioux Falls, for appellee Pipestone Concrete.

GILBERTSON, Justice

[¶ 1.] The City of Watertown (City) advertised for bids on a project to replace a portion of its storm sewer. The lowest bidder was Pipestone Concrete, Inc. (Pipestone). H & W Contracting, LLC (H & W) was the next lowest bidder. After the contract was awarded to Pipestone, H & W sued City claiming it should have been awarded the contract because of irregularities in Pipestone's bid. The circuit court granted summary judgment in favor of City. We affirm.

## FACTS AND PROCEDURE

.[¶ 2.] On March 23, 2000, City issued an invitation for bids on a project involving the replacement of a major lift station and a portion of the storm sewer. As part of this process, City hired Allen Erickson, of HDR Engineering, to prepare documents associated with the project as well as review and recommend bids. When preparing bids, each contractor was required to complete a detailed bid sheet, which listed separate prices for various items of work to be performed. For most items, the contractors were required to list a "unit bid price" and an "amount bid," which was the unit bid price multiplied by the number of units to be used. Several items, however, required the contractors to only list a "lump-sum" or total price. City received five bids on the project, which were opened on April 13, 2000. Pipestone's bid was $1,863,430.00. The next lowest bid was from H & W, for $1,907,129.55.

[¶ 3.] As part of his responsibility to City, Erickson prepared a "bid tabulation" for each individual bid. A "bid tabulation" checks a bid for errors by using a spreadsheet to compare the number of units and unit bid price for each item comprising the bid. The totals using this comparison were then compared with the total bid amount. When this process was performed on Pipestone's bid, two discrepancies were found. On item 39, which involved amounts allocated to traffic control devices, Pipestone had inserted $11,000 in the column marked "unit bid price." It had then carried that number across to the

"amount bid" column. When the bid tabulation multiplied the quantity of traffic control devices (5,088) by the $11,000 figure listed as the unit bid price, the total bid amount for the entire project would have increased to $57,820,438.00, or thirty-one times the total indicated on the actual bid.[1] The bid tabulation also indicated a minor error on line 69.[2]

[¶ 4.] On April 17, 2000, Erickson informed Pipestone of the errors in its bid. At that time, Pipestone faxed Erickson a quote from Pipestone's subcontractor for that item. The bid from the subcontractor for item 39 was $10,176 and was dated prior to the bid opening. That figure had been rounded up to $11,000 to account for damage incurred throughout the project. Instead of subdividing the price per unit, Pipestone had entered the total price on the bid sheet. Figuring backward from $11,000, the unit price was $2.16. The unit price of the other four bidders on this item ranged from $2.00 to $3.00.[3] Pipestone also agreed to correct the error on line 69. After these errors were corrected, Erickson created a new bid tabulation. The new bid tabulation totaled Pipestone's bid at $1,863,438.00, an increase of $8.

[¶ 5.] Erickson explained the discrepancies to Larry Little, City's Public Works Director. Little agreed with Erickson's assessment that the $11,000 unit bid price was intended to be the amount bid and any other interpretation would be "ridiculous." Little recommended the Pipestone bid to the city council, which accepted the bid. The city council forwarded a contract to

Pipestone, which was signed on May 18, 2000.

[¶ 6.] On May 10, 2000, H & W filed an application for peremptory writs of prohibition and mandamus. In its application, H & W requested that the circuit court prohibit City from awarding the contract to Pipestone and direct City to award the contract to H & W. H & W's application was later amended to add a request for declaratory relief. At a hearing on May 19, 2000, Pipestone was allowed to intervene. In addition, Jamie Frentz was joined as a petitioner, based on his standing as a taxpayer and citizen of Watertown.[4] The circuit court ruled that H & W lacked standing, as a disappointed bidder, to challenge the award of the contract. It denied the writs of prohibition and mandamus because Frentz had an adequate legal remedy, namely the declaratory relief that he sought. The parties then moved for summary judgment on Frentz' request for declaratory relief. The circuit court found Pipestone's bid contained two obvious clerical errors, and that the errors had not provided any competitive advantage over other bidders. The circuit court decided that the legislative intent of the competitive bidding laws had not been violated by the correction of such errors. Therefore, it granted summary judgment in favor of City. H & W and Frentz appeal, raising three issues:

1. Whether H & W, as a disappointed bidder, has standing to challenge an alleged violation of South Dakota's competitive bidding laws.

---

1. Using $11,000 as the unit bid price would apportion 97% of the costs of the project for traffic control.

2. The quantity indicated in line 69 was 29 units, the unit bid price being $62. The amount bid, as written, was $1,790. Twenty-

nine units multiplied by $62 properly yields a total of $1,798, a difference of $8.

3. H & W's unit price was $2.20.

4. Frentz is a cousin to Tom Hurd, one of H & W's principal owners.

2. Whether a municipality may correct a clerical error on a bid for a public contract.

3. Whether H & W and/or Frentz were entitled to writs of mandamus and prohibition requiring City to award the contract to H & W.

### STANDARD OF REVIEW

[¶ 7.] Our standard of review on a circuit court's grant of summary judgment is well settled, "we will affirm only if all legal questions have been decided correctly and there are no genuine issues of material fact." *Estate of Juhnke v. Marquardt*, 2001 SD 26, ¶ 5, 623 N.W.2d 731, 732 (citations omitted). The parties have agreed that no issues of material fact exist. Therefore, we need only determine whether the circuit court correctly applied the law. *Id.*

### ANALYSIS AND DECISION

[¶ 8.] **1. Whether H & W, as a disappointed bidder, has standing to challenge an alleged violation of South Dakota's competitive bidding laws.**

 [¶ 9.] Whether a party has standing is a legal conclusion, which we review under the de novo standard. *City of Deadwood v. Summit, Inc.*, 2000 SD 29, ¶ 9, 607 N.W.2d 22, 25; *Kankakee County Bd. of Review v. Property Tax Appeal Bd.*, 316 Ill.App.3d 148, 249 Ill.Dec. 186, 735 N.E.2d 1011, 1014 (2000). In general, a party establishes standing by showing "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Agar School Dist. No. 58-1 v. McGee*, 527 N.W.2d 282, 284 (S.D.1995) (quoting *Parsons v. South Dakota Lottery*

*Comm'n*, 504 N.W.2d 593, 595 (S.D.1993)). Therefore, to have standing, H & W must show some actual or threatened injury caused by City's actions.

[¶ 10.] H & W claims, in light of the errors on Pipestone's bid, it was the lowest responsible bidder and is therefore legally entitled to the contract. In *Tri–State Milling Co. v. Board of County Com'rs*, 75 S.D. 466, 68 N.W.2d 104 (1955), this Court addressed a similar situation. In that case, the lowest bidder sued the County when he was not awarded the contract. In deciding whether the lowest bidder was an "aggrieved person" under the statute, we stated, "[t]he requirement that contracts shall be let to the lowest responsible bidder is intended for the protection of the public rather than that of the bidders. No legally enforceable right vested in the appellant merely because it was ostensibly the lowest bidder." *Id.* at 468, 68 N.W.2d at 105. This holding recognizes that City's advertisement for bids merely invites offers. The bids submitted by contractors are offers to contract. Even the lowest responsible bid on a public contract does not give rise to any private right of enforcement until it has been accepted. *See* SDCL 5–18–2, –3 (giving a city "the right to reject any and all bids."); *La Mar Constr. Co. v. Holt County*, 542 S.W.2d 568, 569–70 (Mo.Ct.App.1976); 10 McQuillin, Municipal Corporations § 29.77 (3rd Ed. Rev.). Like Tri–State Milling Co., H & W holds no entitlement to the contract, even if it were the low bidder, and therefore can show no actual or threatened injury as a result of City's actions.

 [¶ 11.] However, "a taxpayer need not ... suffer special injury to himself to entitle him to institute an action to protect public rights." [5] *Agar School Dist.*, 527

---

5. The circuit court allowed Frentz to join this action based on his status as a citizen and

taxpayer of Watertown. That decision has not been appealed.

N.W.2d at 284. H & W is organized as a limited liability company under the laws of Minnesota and has its principal place of business in Sioux Falls. Therefore, H & W does not have standing as a Watertown taxpayer.

[¶ 12.] Despite this general rule, a large number of jurisdictions have adopted an exception, which allows disappointed bidders to challenge the award of a public contract, acting as private attorneys general on behalf of the public.[6] Standing has been bestowed in cases of "fraud, corruption or acts undermining the objective and integrity of the bidding process." *Connecticut Associated Builders and Contractors v. City of Hartford*, 251 Conn. 169, 740 A.2d 813, 821 (1999) ("CABC"); *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville*, 842 S.W.2d 611, 617 (Tenn.Ct.App.1992) ("MARTA"); *Walt Bennett Ford, Inc. v. Pulaski County Special School Dist.*, 274 Ark. 208, 624 S.W.2d 426, 428 (1981); *Aqua–Tech, Inc. v. Como Lake Protection and Rehabilitation Dist.*, 71 Wis.2d 541, 239 N.W.2d 25, 31 (1976); *Trap Rock Ind., Inc. v. Kohl*, 59 N.J. 471, 284 A.2d 161, 165 (N.J.1971). These courts have recognized that while, in theory, a taxpayer could challenge the governing body's actions; in reality, few taxpayers are willing to shoulder the time and expense necessary to pursue such an action. *See State ex rel. E.D.S. Federal Corp. v. Ginsberg*, 163 W.Va. 647, 259 S.E.2d 618, 623–24 (1979); *Aqua Tech*, 239 N.W.2d at 31. On the other hand, a disappointed bidder is intimately involved in the bid-letting process, will be familiar with any irregularities, and can be expected to protect its interests. *Id.* A disappointed bidder is more likely, and more able, to challenge a bid-letting process that violates the competitive bidding laws, and thereby protect not only its own rights, but also those of the public. *MARTA*, 842 S.W.2d at 617; *Walt Bennett Ford*, 624 S.W.2d at 428. We are persuaded by this reasoning and hereby adopt a limited exception to the rule announced in *Tri–State*. When the bidding process has been undermined by "favoritism, improvidence, extravagance, fraud [or] corruption," disappointed bidders have standing to sue on behalf of the public's interest. *See Fonder v. Sioux Falls*, 76 S.D. 31, 34, 71 N.W.2d 618, 620 (1955).

[¶ 13.] We are mindful of the increased burden this exception could place on governmental agencies forced to defend lawsuits brought by disappointed bidders. Therefore, before a disappointed bidder will be granted standing, it must establish the existence of "favoritism, improvidence, extravagance, fraud [or] corruption." *Fonder*, 76 S.D. at 34, 71 N.W.2d at 620. *See also CABC*, 740 A.2d at 821. This burden does not require the bidder to prove the merits of its case. However, the disappointed bidder must at least establish, at a pre-trial evidentiary hearing, a colorable claim, or prima facie case, of such activity before it will be allowed to proceed with its claim. *Id.* at 822.

[¶ 14.] H & W's petition sought equitable relief in the form of writs of prohibition and mandamus, as well as declaratory relief requiring City to award the contract to H & W. Under the limited exception herein adopted, the relief sought by disappointed bidders must be limited to such requests. Because a disappointed bidder's standing is based on the protection of public interests, it extends only to suits for declaratory or equitable relief

6. Of the 40 states that have addressed this issue, 27 have granted this type of standing to disappointed bidders.

seeking to compel compliance with the competitive bid laws.[7] *MARTA*, 842 S.W.2d at 617; *Stride Contracting Corp. v. City of Yonkers*, 181 A.D.2d 876, 581 N.Y.S.2d 446, 448 (1992); *Conway Corp. v. Construction Engineers, Inc.*, 300 Ark. 225, 782 S.W.2d 36, 41 (1989). Such suits protect the public from excessive contracts and increased tax burden. *Dick Enterprises, Inc. v. Metropolitan/King County*, 83 Wash.App. 566, 922 P.2d 184, 186 (1996). However, suits by disappointed bidders seeking damages perform no such legitimate public service. In fact, "[t]o allow damages would violate the public interest by subjecting taxpayers to further penalties when they are already injured by paying too high a price under an illegal contract." *Id.* Therefore, disappointed bidder standing does not extend to suits seeking to recover damages, such as lost profits and bid preparation costs. *Id.; Becker Electric Inc. v. City of Bismarck*, 469 N.W.2d 159, 162 (N.D.1991); *Sutter Brothers Constr. Co. v. City of Leavenworth*, 238 Kan. 85, 708 P.2d 190, 196 (1985); *Gulf Oil Corp. v. Clark County*, 94 Nev. 116, 575 P.2d 1332, 1334 (1978).

[¶ 15.] H & W fails to fall into this limited standing exception. While it has made veiled accusations of fraud and corruption by City and Pipestone, it has produced no such evidence. Therefore, it does not have standing to protect the public's interest. In reality H & W seeks an award of the bid which would cost the taxpayers of Watertown an additional $43,699.55, while granting them no additional contractual benefits.

[¶ 16.] **2. Whether a municipality may correct a clerical error on a bid for a public contract.**

[¶ 17.] Resolution of this issue involves statutory interpretation, which is a question of law, reviewed under the de novo standard. *Maryott v. First Nat'l Bank of Eden*, 2001 SD 43, ¶ 17, 624 N.W.2d 96, 102. Frentz claims Pipestone was allowed to modify its bid in violation of the competitive bidding laws. To make this claim, Frentz relies upon the following language in § 17.1 of the bid specifications: "[d]iscrepancies between the multiplication of units of Work and unit prices will be resolved in favor of the unit prices." According to that language, Frentz argues the unit price of $11,000 controls over the figure in the amount bid column. Under that reasoning, Pipestone's amount bid for traffic control would be $55,968,000 and the total bid would be $57,820,438.00. When Pipestone was allowed to correct that error, its bid was allegedly modified in violation of SDCL 5–18–8.[8] That statute

---

7. It should be remembered that to prevail on such a claim, a disappointed bidder must rebut the strong presumption of legitimacy traditionally granted governing bodies. See *Schrank v. Pennington County Bd. of Comm'rs*, 2000 SD 62, ¶ 6, 610 N.W.2d 90, 92.

8. That statute provides as follows:
 The sealed bids shall not be opened until the time and place specified in the advertisement therefor, but must be publicly opened and read at said time and place. Any bid may be withdrawn by letter or by telegraphic communications or in person before the time specified in the advertisement therefor. Bids may be modified by mail, telegraphic notice or facsimile notice received at the place designated in the invitation to bid not later than the time set for the opening of bids. Telegraphic or facsimile modification shall not reveal the bid price but shall provide the addition or subtraction or the modification so that the final prices or terms will not be known to the public corporation until the sealed bid is opened. Any telegraphic or facsimile modification may not be withdrawn after the time set for the opening of bids. Telegraphic modifications must be confirmed in writing by the successful bidder before award of the contract. No bid made shall be changed or altered by telephone.

allows for the modification of bids before the bids have been opened, and expressly disallows modifications over the telephone. According to Petitioners, Pipestone was allowed to modify its bid after the bids had been opened, and allowed to do so telephonically, all in violation of SDCL 5–18–8.

[¶ 18.] While we do strictly enforce South Dakota's competitive bidding laws, we do so to protect the public treasury against "favoritism, improvidence, extravagance, fraud and corruption." *Fonder*, 76 S.D. at 34, 71 N.W.2d at 620. With that principle in mind, we cannot agree with the assertion by Frentz that the bid was modified. Therefore, SDCL 5–18–8 does not apply. The only premise upon which Frentz can claim Pipestone's bid was modified is the language in § 17.1 of the bid specifications that the unit price controls when discrepancies exist. As pointed out in *Sciaba Constr. Corp. v. City of Boston*, 35 Mass.App.Ct. 181, 617 N.E.2d 1023, 1028 (1993), such a "clause is meant to apply when an aid to interpretation is needed to understand the bid and not when the intent of the bidder is, as here, apparent." It is abundantly clear from the face of Pipestone's bid that it intended $11,000 as the total amount bid for item 39, no interpretation is necessary. Therefore, we will not apply that provision as urged by Frentz.

[¶ 19.] In *Spina Asphalt Paving Excavating Contractors, Inc. v. Borough of Fairview*, 304 N.J.Super. 425, 701 A.2d 441 (1997) a similar situation arose. Spina's bid listed an erroneous unit price of $400, instead of the intended $4 per unit. The Borough implemented language in the bid specifications similar to that urged by Frentz, increased Spina Asphalt's total bid from $125,781.85 to $660,381.85, and awarded the contract to the next lowest bidder. The *Spina Asphalt* court determined there was no ambiguity in the bid

and therefore the language in the bid specifications did not apply. It found the $400 unit price to be "grotesquely exorbitant," and the "error so obvious that the true intent of the bidder was clear beyond any doubt." *Id.* at 444. The court held that the Borough had abused its discretion and violated the competitive bidding laws by not awarding Spina Asphalt the contract.

[¶ 20.] *Sciaba Constr.* is also factually similar to the present case. In that case, Modern Continental Construction Co. ("MCCC") mistakenly inserted $15 as the unit price per linear foot of paint, rather than $.15. 617 N.E.2d at 1025. The city corrected this mistake and awarded the contract to MCCC. Sciaba Constr., as the next lowest bidder, challenged that decision. In that case, it was apparent from the face of MCCC's bid, from other bids on that item, and from the city engineer's estimate that $.15 was the intended bid. The *Sciaba Constr.* court concluded the error was an "obvious clerical error that deceive[d] no one" and the city was permitted to correct it. *Id.* at 1028. *See Fenske Printing, Inc. v. Brinkman*, 349 N.W.2d 47, 48 (S.D.1984) (finding bid "substantially complied" with the specifications despite technical deficiency).

[¶ 21.] These decisions are in accord with the test we have adopted for examining bids on public contracts:

It is a general rule that the bid of one proposing to contract for the doing of a public work must, in order to secure the contract, respond or conform substantially to the advertised terms, plans and specifications. After bids have been received and opened, no material change can be made in any bid which may be more favorable to the successful bidder and is in variance with the specifications. *Gridley v. Engelhart*, 322 N.W.2d 3, 8 (S.D.1982) (citations omitted). Therefore, if a bid does not substantially conform to

the specifications, it must be rejected. However, "[b]ids are not held to an inflexible standard." *Fenske,* 349 N.W.2d at 48. A change made to a bid is material when "it gives one bidder a substantial advantage or benefit not enjoyed by the other bidders." *Gridley,* 322 at 8. City's decision to correct a clerical error on a bid sheet clearly falls under this substantial conformance test. Therefore, we must determine whether Pipestone received a substantial advantage over H & W.

[¶ 22.] As was the case in *Sciaba Constr.* and *Spina Asphalt,* here it is obvious on the face of the bid that Pipestone intended to bid $11,000 for all the work required under item 39. We need only look to the next column on the bid sheet where $11,000 is again entered in the "amount bid" column to support this conclusion. The $11,000 bid for item 39 is consistent with the amounts bid by the four other bidders, which ranged from $10,176 to $16,179.84. In addition, this conclusion is consistent with the total bid for the entire project written in words and figures on Pipestone's bid sheet. Regarding the error on line 69, $8.00 is clearly not material to a contract of over $1.8 million. These errors were obvious clerical errors in Pipestone's bid. While we strictly construe public bidding statutes, we will not enforce a strained interpretation when the result is an additional burden of over $43,000 upon the citizens of Watertown. Before the bid was corrected, Pipestone's bid was $43,699.55 less than H & W's bid. After the correction, Pipestone's bid was still $43,691.55 less than H & W's. An eight-dollar difference cannot be considered a "substantial advantage" under the *Gridley* test. Therefore, City was entitled

to correct the errors and award the contract to Pipestone.[9]

[¶ 23.] **3. Whether H & W and/or Frentz were entitled to a writ of mandamus and prohibition awarding the contract to H & W.**

[¶ 24.] Decisions by a circuit court involving mandamus or prohibition are discretionary; therefore, the standard under which we review a trial court's decision is abuse of discretion. *Sorrels v. Queen of Peace Hosp.,* 1998 SD 12, ¶ 7, 575 N.W.2d 240, 243. To prevail on a writ of mandamus or prohibition, Petitioners must show "a clear legal right to performance of the specific duty sought to be compelled and the [City] must have a definite legal obligation to perform that duty." *Willoughby v. Grim,* 1998 SD 68, ¶ 7, 581 N.W.2d 165, 168. As has been established, H & W cannot meet the standing requirement. Because City was entitled to correct the errors in Pipestone's bid, Frentz cannot show a "clear legal right" to the contract, nor does City have an obligation to award the contract to H & W. Therefore, Frentz was not entitled to mandamus or prohibition, and the circuit court did not abuse its discretion.

[¶ 25.] In addition, mandamus and prohibition will only be granted when no other "plain, speedy and adequate remedy in the ordinary course of law" is available to the petitioner. *Cummings v. Mickelson,* 495 N.W.2d 493, 496 (S.D. 1993); SDCL 21–29–2 (mandamus); 21–30–2 (prohibition). In his amended petition, Frentz sought declaratory relief in addition to writs of prohibition and mandamus. In a declaratory relief action, the

9. H & W has not submitted any evidence that City engaged in any "favoritism, improvidence, extravagance, fraud [or] corruption." *See Fonder,* 76 S.D. at 34, 71 N.W.2d at 620. Nor is there any evidence that Pipestone was attempting to manipulate the competitive bidding framework or deceive other participants in the process. The *Gridley* "substantial compliance" test should only be applied in cases where no such evidence is presented.

circuit court has the "power to declare rights, status, and other legal relations" between the parties. SDCL 21–24–1. Declaratory judgment is particularly useful in determining legal rights associated with "a deed, will, written contract, or other writing constituting a contract. . . ." SDCL 21–24–3. In this case, a "plain, speedy and adequate remedy," in the form of declaratory relief was available to Frentz. Therefore, he was not entitled to writs of mandamus and prohibition. *See Agar*, 527 N.W.2d at 286 (denying prohibition because adequate remedy available through SDCL 10–27–2, the "payment under protest" statute); *Corbly v. Matheson*, 335 N.W.2d 347, 348–49 (S.D.1983) (prohibition denied because petitioner could have removed small claims action to circuit court); *Gilmore v. Sandy*, 50 S.D. 247, 209 N.W. 342, 342 (1926) (denying prohibition because injunctive relief was available and adequate).

[¶ 26.] Judgment is affirmed.

[¶ 27.] MILLER, Chief Justice, and SABERS, and AMUNDSON, Justices, and WILBUR, Circuit Judge, concur.

[¶ 28.] Wilbur, Circuit Judge for Konenkamp, Justice, disqualified.